STATE OF NORTH CAROLINA v. JOSEPH KEITH REID

No. 9025SC1121

(Filed 5 November 1991)

1. **Criminal Law § 427 (NCI4th)— breaking and entering— comment on failure to testify—no error**

There was no error in a prosecution for felonious breaking and entering where the prosecutor referred in his closing argument to defendant's failure to testify. The State's comments in this case do not rise to the level of extended comments prohibited by the law of this state and, furthermore, defendant has failed to establish that the statement was so prejudicial that without it there was a reasonable possibility that the outcome of the trial would have been different.

**Am Jur 2d, Trial § 507.**

STATE v. REID

[104 N.C. App. 334 (1991)]

Violation of federal constitutional rule (Griffin v. California) prohibiting adverse comment by prosecutor or court upon accused's failure to testify, as constituting reversible or harmless error. 24 ALR3d 1093.

2. Searches and Seizures § 9 (NCI3d)— breaking and entering— traffic stop—motion to suppress denied

The trial court did not err in a prosecution for felonious breaking and entering by denying defendant's motion to suppress evidence seized as a result of a traffic stop where officers had checked a Revco store and noticed that the lights were on, although it was locked and no one was in the parking lot; they subsequently received a radio call of an alarm at Revco; they noticed defendant's car parked facing south along the highway as they responded to the call; they found that no lights were on at the Revco and that the meter box was missing; they immediately returned to the area where defendant's car had been parked to obtain its license number; the car was gone, but within two minutes they observed the car moving north without its headlights and accelerating at a high rate of speed; the officers immediately gave chase with their siren and blue light engaged; and defendant's car traveled at 70 to 90 miles per hour and did not immediately stop for officers. It was not necessary for the officers to have a reasonable suspicion that defendant committed the break-in at Revco; only that the police have a reasonable suspicion of some illegal conduct.

Am Jur 2d, Searches and Seizures §§ 45, 96.

Lawfulness of search of motor vehicle following arrest for traffic violation. 10 ALR3d 314.

3. Constitutional Law § 295 (NCI4th); District Attorneys § 4 (NCI4th)— breaking and entering—defense attorney joining district attorney's office—prosecution not barred

The trial court did not err by denying defendant's motion to dismiss and bar a prosecution for felonious breaking and entering where defendant's first attorney joined the District Attorney's office and the District Attorney requested and received assistance in prosecuting the case from the Special Prosecutions Section of the Attorney General's office. Neither the assistant district attorney who first handled the case nor

STATE v. REID

[104 N.C. App. 334 (1991)]

the assistant attorney general would be prohibited from prosecuting the case under the North Carolina Rules of Professional Conduct, Rule 9.1(C), and, to avoid any potential conflict, the assistant attorney general was assigned to prosecute the case independently of the district attorney's office. The information the assistant district attorney and the assistant attorney general received from defendant's former counsel was not confidential information and was a matter of public record. The trial court made appropriate findings of fact which are supported by competent evidence.

Am Jur 2d, Prosecuting Attorneys §§ 31, 32.

Disqualification of prosecuting attorney on account of relationship with accused. 31 ALR3d 953.

4. Evidence and Witnesses § 222 (NCI4th)— breaking and entering—flight—sufficiency of evidence

The trial court did not err in a felonious larceny prosecution by instructing the jury on defendant's flight from the scene of the crime, a Revco, where officers first spotted defendant's car parked in the opposite direction of the Revco; they discovered that the vehicle was gone when they returned to obtain the license number; they next saw it moving in a northerly direction without its lights; and defendant attempted to flee from the officers at a high rate of speed.

Am Jur 2d, Evidence §§ 280, 281.

5. Evidence and Witnesses § 312 (NCI4th)— breaking and entering—other crimes—admissible for modus operandi

The trial court did not err in a prosecution for felonious breaking and entering by admitting evidence of other crimes for the purpose of showing modus operandi in the present case where the crime being tried and the other crimes met the similarity and temporal proximity prongs of the admissibility test. Moreover, the probative value of the evidence was not outweighed by its prejudicial effect. N.C.G.S. § 8C-1, Rule 404(b).

Am Jur 2d, Evidence §§ 321, 326.

APPEAL by defendant from judgment entered 29 March 1990 by *Judge Hollis M. Owens, Jr.,* in CALDWELL County Superior Court. Heard in the Court of Appeals 27 August 1991.

**STATE v. REID**

[104 N.C. App. 334 (1991)]

On 13 June 1988, defendant was indicted for felonious breaking and entering in violation of N.C. Gen. Stat. § 14-54. He was tried before a jury, convicted on 29 March 1990, and sentenced to ten years active imprisonment. From the judgment and conviction of 29 March 1990, defendant appeals.

*Attorney General Lacy H. Thornburg, by Assistant Attorney General John H. Watters, for the State.*

*Appellate Defender Malcolm Ray Hunter, Jr., by Assistant Appellate Defender Daniel R. Pollitt, for defendant-appellant.*

ORR, Judge.

Defendant argues five errors on appeal. For the following reasons, we hold that the trial court did not err and affirm the judgment of 29 March 1990.

This case arises from defendant's alleged breaking and entering of the Revco Drug Store in Pinewood Shopping Center in Granite Falls. The evidence at trial tends to show that on 1 February 1988, Charlotte McCorcle, pharmacist assistant manager at Revco, was called to the store by an activated alarm. Upon entering the store with a sheriff's deputy, she noticed that drugs on the shelves were in disarray, there were muddy shoe prints and fingerprints on the floor and the shelves, and the meter box at the back of the store had been pulled off the wall and was missing. There was also a hole in the back wall which had not been there when Ms. McCorcle had closed and locked the store the night before.

The activated alarm also notified patrol officers Sergeant Paul Brittain and Officer Sandra Brown of a possible break-in at Revco. The officers received the call at 2:25 a.m. on 1 February 1988, and proceeded north on Highway 321 toward Pinewood Shopping Center. As they approached the shopping center, the only automobile they observed was a parked Ford headed in the opposite direction. This automobile was located approximately 100 yards from the shopping center through the woods. As the officers approached the parking lot of the shopping center, they observed no other cars or persons. They noticed that the lights were out at Revco. They drove to the back of the building and noticed that the meter box was missing from the back of Revco. They drove to where the Ford had been parked to try to obtain its license number and discovered that the car was gone. Less than two minutes later

they saw the car on Highway 321, traveling in a northerly direction. Officer Brown observed a person later identified as defendant driving the car.

Officer Brown testified that the vehicle was traveling at an accelerated speed without its headlights on. Sergeant Brittain activated his siren and blue lights and chased defendant's car, reaching speeds between 70 and 90 miles per hour. Defendant did not stop immediately but did finally pull over and slowly moved down the right side of the road. The only occupant of the car was defendant. Both passenger and driver windows were rolled down on a cold, wet night.

Defendant told Sergeant Brittain that he had run out of gas, although he gave no explanation for the car starting after the officers first observed him. Sergeant Brittain also observed cloth gloves on the back floorboard of the car. Defendant voluntarily returned to Revco with the officers.

When defendant returned to Revco, another officer (Officer Seagle) observed white foam pellet insulation (which was consistent with the insulation in the hole in Revco's back wall) in defendant's hair. Additional evidence collected at the scene of the crime included, *inter alia*, footwear impressions containing foam bead insulation which matched defendant's footwear, foam bead insulation from defendant's clothes which matched the insulation at Revco, foam bead insulation from the floorboard of defendant's car and brown cotton gloves found in the car, and fibers taken from the point of entry which matched the fibers in the toboggan defendant was wearing that night. The officers located a sledgehammer by the side of the road where defendant had slowed down before he stopped his car. The sledgehammer was dry, although it was a cold, wet night.

At trial, Officer Keith Powers of the Winston-Salem Police Department testified to a separate incident that occurred on 3 January 1989 when he responded to an activated alarm call at Pleasant's Hardware in Winston-Salem at approximately 3:49 a.m. When he checked the store for signs of a break-in, he noted a hole knocked in the back of the building and then discovered defendant inside the building. The evidence indicated that this hole was consistent in size and shape to the hole in the back of Revco found during the break-in of February 1988.

STATE v. REID

[104 N.C. App. 334 (1991)]

I.

[1]   Defendant first argues that the trial court erred in allowing the prosecutor for the State to make an inappropriate remark during closing argument concerning defendant's failure to testify in his defense. We disagree.

During his closing argument, the prosecutor discussed the intent element of larceny, and the following exchange occurred.

[THE STATE]: And the final element of the crime of felonious breaking or entering is that the breaking or entering was done with the intent to commit larceny. Now ladies and gentlemen, intent, as Judge Owens is going to tell you in a little while, is a process of the mind. It's right up here. It's not susceptible to direct proof. What must come from circumstantial evidence and things that can be inferred.

Now the defendant hasn't taken the stand in this case—

MR. BURKHEIMER: Objection to his remarks about that, Your Honor.

THE COURT: Overruled.

MR. BURKHEIMER: Exception.

[THE STATE]: The defendant hasn't taken the stand in this case. He has that right. You're not to hold that against him. But ladies and gentlemen, we have to look at the other evidence to look at intent in this case. What do we have? Well, we've got a hole in the back wall. Why would anybody do that? Just for the heck of it? Is this vandalism? The State contends that it's not. We've got an entry into the building. Just wanted to go in there, do something, take a look around? State contends that's preposterous. But the most damning of all evidence is that set of shoe tracks going right to the drug counter.

. . . .

The State contends that it may argue the applicable law and all reasonable inferences, and that its argument to the jury was not an "extended reference" to defendant's failure to take the witness stand in his own defense which would require a new trial. Defendant maintains that the State's comments were grossly improper and unconstitutional because it drew the jury's attention to his choice not to testify.

It is well-settled law that in a criminal prosecution, a defendant has the right not to testify and that such failure to testify shall not create a presumption of guilt against him. N.C. Const. art. I § 23; N.C. Gen. Stat. § 8-54 (1986). Further, the general rule is that counsel may not make an improper comment on defendant's failure to testify. *State v. Monk*, 286 N.C. 509, 516, 212 S.E.2d 125, 131 (1975) (citations omitted). The purpose of this rule is that "extended reference" by counsel or the court "would nullify the policy that the failure to testify should not create a presumption against the defendant." *State v. Styles*, 93 N.C. App. 596, 610, 379 S.E.2d 255, 264 (1989), *quoting, State v. Randolph*, 312 N.C. 198, 206, 321 S.E.2d 864, 869 (1984). However, it is not reversible error if the State makes a "veiled reference" to a defendant's failure to testify which is "so brief and indirect as to make improbable any contention that the jury inferred guilt from the failure of the defendant to testify." *Id.*

Moreover, in *State v. Banks*, 322 N.C. 753, 370 S.E.2d 398 (1988), our Supreme Court stated,

> [t]he reason for the rule is that *extended comment* from the court or from counsel for the state or defendant would tend to nullify the declared policy of the law that the failure of one charged with crime to testify in his own behalf should not create a presumption against him or be regarded as a circumstance indicative of guilt or unduly accentuate the significance of his silence. . . . . .
>
> While the mere statement by defendants' counsel that the law says no man has to take the witness stand *would seem unobjectionable*, it is obvious that further comment or explanation might have been violative of the rule established by the decisions of this Court.

*Id.* at 763, 370 S.E.2d at 405, *quoting, State v. Bovender*, 233 N.C. 683, 689-90, 65 S.E.2d 323, 329-30 (1951).

Applying the above principles to the State's comments in the case *sub judice*, we hold that the comments do not rise to the level of "extended comments" prohibited by the law of this state. The thrust of that portion of the State's argument to the jury was to explain to the jury what evidence it could use to determine defendant's intent to commit larceny. The State made reference to defendant's failure to testify, his right to do so, the jury's duty

not to hold that against defendant, and then the evidence that may be considered to determine defendant's intent.

We note additionally that pursuant to the North Carolina Pattern Jury Instructions, the trial court either in its discretion or upon request can instruct the jury that the defendant has not testified; that the law of North Carolina gives him that privilege and assures the defendant that his decision not to testify creates no presumption against him; and therefore his silence is not to influence their decision. N.C.P.I. — Crim., 101.30. The comments made by the prosecutor essentially track these instructions.

The statement in the present case was not comparable to those statements made in other cases in which our courts have held them to be improper statements. *See, e.g., State v. McCall*, 286 N.C. 472, 212 S.E.2d 132 (1975), *vacated in part*, 429 U.S. 912, 50 L.Ed.2d 278, 97 S.Ct. 301 (1976); *State v. Monk*, 286 N.C. 509, 212 S.E.2d 125 (1975); *State v. Ferrell*, 75 N.C. App. 156, 330 S.E.2d 225, *disc. review denied and appeal dismissed*, 314 N.C. 333, 333 S.E.2d 492 (1985); *State v. Oates*, 65 N.C. App. 112, 308 S.E.2d 507 (1983), *disc. review denied*, 315 S.E.2d 708 (1984); *State v. Waddell*, 11 N.C. App. 577, 181 S.E.2d 737 (1971).

Further, even if the statement in the instant case had been an improper statement, defendant has failed to establish that the error was so prejudicial that without it there was a reasonable possibility that the outcome of the trial would have been different. N.C. Gen. Stat. § 15A-1443(a) (1988). *State v. Banks*, 322 N.C. 753, 764, 370 S.E.2d 398, 406 (1988). We cannot find that had the reference not been made by the State in its closing argument concerning defendant's failure to testify, the evidence against defendant would have been minimized to such an extent that the jury probably would have found him not guilty.

For the foregoing reasons, we find no error in the State's closing argument to the jury, though we sound a cautionary note that such comments will be found acceptable in only the most narrow factual circumstances.

II.

[2] Defendant next argues that the trial court erred in denying his motion to suppress certain evidence because it was obtained as a result of an unconstitutional stop. We find no error.

STATE v. REID

[104 N.C. App. 334 (1991)]

Defendant maintains that Sergeant Brittain and Officer Brown did not have reasonable, articulable suspicion to stop defendant's car on 1 February 1988, and therefore, all evidence obtained from defendant was erroneously admitted at trial. The State argues that the facts of this case created such suspicion and the stop was therefore legal and the evidence admissible.

It is well-settled law that a police officer may make a brief investigative stop of a vehicle if justified by specific, articulable facts giving rise to a reasonable suspicion of illegal activity. *Alabama v. White*, 110 L.Ed.2d 301, 110 S.Ct. 2412, 58 U.S.L.W. 4747 (1990); *United States v. Brignoni-Ponce*, 422 U.S. 873, 45 L.Ed.2d 607, 95 S.Ct. 2574 (1975); *Terry v. Ohio*, 392 U.S. 1, 20 L.Ed.2d 889, 88 S.Ct. 1868 (1968).

In *Alabama v. White*, 110 L.Ed.2d 301, 110 S.Ct. 2412, 58 U.S.L.W. 4747 (1990), the United States Supreme Court discussed the applicable standard for reasonable suspicion for a vehicular stop.

> Reasonable suspicion is a less demanding standard than probable cause not only in the sense that reasonable suspicion can be established with information that is different in quantity or content than that required to establish probable cause, but also in the sense that reasonable suspicion can arise from information that is less reliable than that required to show probable cause. . . . . Reasonable suspicion, like probable cause, is dependent upon both the content of information possessed by police and its degree of reliability. Both factors — quantity and quality — are considered in the "totality of the circumstances — the whole picture," [citation], that must be taken into account when evaluating whether there is reasonable suspicion.

*Id.*, 110 L.Ed.2d at 309, 110 S.Ct. at 2416.

In *State v. Morocco*, 99 N.C. App. 421, 393 S.E.2d 545 (1990), this Court stated that although a police officer may not make *Terry* stops "merely on the pretext of a minor traffic violation," the police officer may make those stops if it is what a reasonable officer *would* do under the same or similar circumstances. *Id.* at 427, 393 S.E.2d at 548.

Applying the above principles to the facts in the case *sub judice*, we hold that the police officers had reasonable, articulable suspicion to stop defendant's car. The officers had checked the Revco store at approximately 1:00 a.m. and noticed that the lights

were on, although it was locked and no one was in the parking lot. After they received the radio call of the alarm at Revco, they noticed defendant's car parked on Highway 321 with the front of the car headed in a southerly direction. When the officers checked Revco, there were no lights on, and they noticed the meter box missing. They immediately returned to the area where defendant's car had been parked to obtain its license number and the car was gone. Within two minutes, they observed the car moving north on Highway 321 without its headlights burning, accelerating at a high rate of speed. The officers immediately began chasing defendant with their patrol car's siren and blue light engaged. Defendant's car travelled at a speed of 70 to 90 miles per hour. Defendant did not immediately stop for the officers. These are specific and articulable facts which, under the circumstances, give rise to a reasonable suspicion of illegal conduct. Further, it is reasonable that any officer would have stopped defendant under the same or similar circumstances.

Under the above law, it is not necessary, as defendant argues, for the officers to have reasonable suspicion that defendant committed the break-in at Revco. It is only necessary that the police have a reasonable suspicion of some illegal conduct. The totality of the circumstances in this case presented the officers with reasonable suspicion that defendant had participated in or was participating in some illegal activity. Therefore, we hold that the trial court did not err in denying defendant's motion to suppress the evidence because the stop was a legal and constitutionally sound stop.

## III.

[3] Defendant's third assignment of error is whether the trial court erred in denying his motions to dismiss based upon defendant's first attorney's dual representation in this case. We find no error.

The record in the present case indicates that attorney Jason Parker was defendant's attorney from February 1988 until 9 August 1988, at which time Parker joined the District Attorney's office as an Assistant District Attorney. During the time he was defendant's attorney, Parker filed a request for voluntary discovery and waived arraignment on behalf of defendant. Parker also held some conferences with defendant and the prosecutor handling the case.

After Parker became an Assistant District Attorney, the Assistant District Attorney who had been handling the case, Gary Dellinger, calendared the case for several dates, appeared in court and called the case for trial. On 24 October 1988, another attorney was appointed to represent defendant. On 21 December 1988, the District Attorney requested assistance in prosecuting this case from the Special Prosecutions Section of the Attorney General's office due to a potential conflict of interest. Assistant Attorney General John Watters was assigned to prosecute the case.

On 23 January 1989, defendant filed a motion to bar prosecution because of dual representation by Parker and the State and argued that the State's further prosecution violated his State and Federal Constitutional rights. Defendant also filed a motion for speedy trial relief. On 10 February, the trial court denied the motion to bar prosecution and denied defendant's speedy trial motion. During the hearing on the speedy trial motion, Parker testified about his conversations and telephone calls with defendant and Dellinger testified about his actions in the case. None of the testimony concerned any confidential information obtained by either Parker or Dellinger.

On 25 September 1989, the trial court heard defendant's motion to dismiss (filed 15 August 1989) on the grounds that Watters' actions in subpoenaing Parker to testify at the 10 February hearing violated defendant's State and Federal Constitutional rights. The trial court summarily denied this motion and entered its order accordingly.

North Carolina case law has addressed the issue that is now before us: whether a private attorney whose successive government employment as a district attorney creates a *per se* disqualification of all the other government attorneys on his staff from prosecuting or appearing at *any* time against his former client. *See State v. Camacho*, 329 N.C. 589, 406 S.E.2d 868 (1991). Based on the reasoning in *Camacho* and the following analysis of the North Carolina Rules of Professional Conduct, we hold that there is no *per se* disqualification rule in North Carolina.

Under the North Carolina Rules of Professional Conduct, Rule 9.1(C):

> Except as law may otherwise expressly permit, a lawyer serving as a public officer or employee shall not:

STATE v. REID

[104 N.C. App. 334 (1991)]

(1) Participate in a matter in which the lawyer participated personally and substantially while in private practice or non-governmental employment, unless under applicable law no one is, or by lawful delegation may be, authorized to act in the lawyer's stead in the matter; or

(2) Negotiate for private employment with any person who is involved as a party or as attorney for a party in a matter in which the lawyer is participating personally and substantially.

The Comment to this rule states, "[p]aragraph (C) does not disqualify other lawyers in the agency with which the lawyer in question has become associated." Comment, N.C.R. Prof. Conduct, Rule 9.1. Therefore, under Rule 9.1(C) and the Comment to the Rule, Parker would have been disqualified from prosecuting defendant, but neither Dellinger nor Watters would be prohibited from prosecuting defendant's case for the State. Dellinger was clearly an "other lawyer in the agency" with whom Parker had become associated.

Further, to avoid any potential conflict at all, Watters was assigned to prosecute the case independently of the Caldwell County District Attorney's office. The information Dellinger and Watters received from Parker concerning the case was not confidential information and was a matter of public record. The trial court made appropriate findings of fact concerning this information in its order of 18 January 1990, and these findings are supported by competent evidence.

Defendant relies on *United States v. Schell*, 775 F.2d 559 (4th Cir. 1985), *cert. denied*, 475 U.S. 1098, 89 L.Ed.2d 898, 106 S.Ct. 1498 (1986), for the proposition that it is fundamentally unfair and unconstitutional for an attorney to represent a client and then "switch sides" and participate in the client's prosecution for the same offense. The *Schell* Court held such, basing its holding on "[t]he confidentiality of the attorney-client relationship is severely compromised, if not destroyed, when, after representing a client, a lawyer joins in the criminal prosecution of that client *with respect to the identical matter about which the attorney originally counseled the client." Id.* at 565 (emphasis in the original). There are, however, at least two fundamental differences in *Schell* and the present case.

First, the attorney in *Schell* who had "switched sides" made an appearance for the United States Attorney's Office in the grand jury proceedings against his former clients in virtually the same matter for which he had been retained earlier to represent them. In our case, Parker made no appearance on behalf of the District Attorney's Office in any of the proceedings against defendant. He did testify at a motion hearing concerning his contacts with defendant and his involvement in the case, but none of that contained confidential information, and he was not appearing as an Assistant District Attorney to assist in prosecuting the case, but a critical witness in the hearing.

Second, it is unclear in *Schell* as to whether the Court based its decision on any rule of professional conduct. The Court cited none in its discussion of this issue. In the present case, the Comment to Rule 9.1(C) of the North Carolina Rules of Professional Conduct specifically states that other lawyers in the District Attorney's Office would not be disqualified from prosecuting defendant, although Parker had served for a period of time as defendant's counsel in the same matter. We again note that the prosecution by Dellinger for the District Attorney's office was limited and counsel from the Attorney General's office quickly obtained.

Finally, we find support for our holding on this issue from many other states. The majority of states who have addressed this issue have refused to adopt a *per se* disqualification rule under similar circumstances. *See State v. McKibben*, 239 Kan. 574, 722 P.2d 518 (1986), and the cases cited therein. In those cases holding that there is not a *per se* disqualification rule, the courts analyze the circumstances of the particular case and determined if any confidences had been breached which would prejudice the defendant. 722 P.2d at 525.

The American Bar Association committee on professional ethics also lends its support to our holding. In Formal Opinion 342, 62 A.B.A.J. 517 (1976), the committee ruled "that it is not necessary to disqualify the entire governmental office [under these circumstances]. The individual lawyer should be screened from having direct or indirect participation in the matter and communication with colleagues concerning the prosecution . . . ." 722 P.2d at 525.

Therefore, for the above reasons, we hold that the trial court did not err in denying defendant's motion to dismiss and bar prosecution because of alleged dual representation.

IV.

Defendant's remaining assignments of error concern whether the trial court erred in admitting evidence of another break-in to show *modus operandi*, and whether it erred in instructing the jury on defendant's flight from the scene of the crime.

A.

[4] Defendant contends that the trial court erred in instructing the jury on defendant's flight from the scene of the crime because there was no evidence of flight. We disagree.

The trial court gave the following charge on flight.

Now members of the jury, the State contends that the defendant fled. The evidence of flight may be considered by you together with all other facts and circumstances in this case in determining whether the combined circumstances amount to an admission or show a consciousness of guilt. However, proof of this circumstance is not sufficient by itself to establish the defendant's guilt.

It has long been held that the trial court may not instruct the jury on a defendant's flight unless "there is some evidence in the record reasonably supporting the theory that defendant fled after commission of the crime charged. . . ." *State v. Irick*, 291 N.C. 480, 494, 231 S.E.2d 833, 842 (1977). *Accord, State v. Levan*, 326 N.C. 155, 388 S.E.2d 429 (1990); *State v. Moxley*, 78 N.C. App. 551, 338 S.E.2d 122 (1985), *disc. review denied*, 316 N.C. 384, 342 S.E.2d 904 (1986). In determining whether or not a defendant fled from the scene of the crime, the relevant inquiry is whether the defendant fled and took some precautions to avoid apprehension. *Levan*, 326 N.C. 155, 165, 388 S.E.2d 429, 434 (1990).

In the case *sub judice*, there is ample evidence of defendant's flight. Sergeant Brittain and Officer Brown first spotted defendant's car parked in the opposite direction of the Revco. After determining that the meter box was missing from the back of Revco, they returned to obtain the license number from defendant's vehicle and discovered that the vehicle was gone. They next saw it moving in a northerly direction without its lights burning. As they began to chase defendant, defendant did not stop his car and attempted to flee from the officers at a high rate of speed. This is more than "some evidence" that defendant fled the scene of the crime

and took steps to avoid apprehension. We find no error in the trial court's instruction on flight.

B.

[5] Finally, defendant contends that he is entitled to a new trial because the trial court erred in admitting evidence of other crimes for the purpose of showing *modus operandi* in the present case. We find no error.

Defendant argues that Officer Powers' testimony concerning defendant's alleged break-in of Pleasant's Hardware on 3 January 1989, was not admissible under Rule 404(b) of the North Carolina Rules of Evidence. He further argues that *State v. McClain*, 240 N.C. 171, 81 S.E.2d 364 (1954), excludes evidence of his subsequent crime to show *modus operandi* in the present crime.

Under N.C. Gen. Stat. § 8C-1, Rule 404(b), evidence of other crimes may be admitted so long as it is relevant to any fact or issue other than the defendant's character. *State v. Bagley*, 321 N.C. 201, 362 S.E.2d 244 (1987), *cert. denied*, 485 U.S. 1036, 99 L.Ed.2d 912, 108 S.Ct. 1598 (1988). Rule 404(b) is now considered a general rule of inclusion of relevant evidence of other crimes if it meets the test for admissibility. *Id.* at 206, 362 S.E.2d at 247. The test for whether such evidence is admissible is whether the incidents or crimes are sufficiently similar and not too remote in time as to be more probative than prejudicial under Rule 403. *Id.; State v. Boyd*, 321 N.C. 574, 364 S.E.2d 118 (1988).

Usually, remoteness in time of another offense goes to the weight of the evidence and not to its admissibility to show *modus operandi. State v. Schultz*, 88 N.C. App. 197, 362 S.E.2d 853 (1987), *aff'd*, 322 N.C. 467, 368 S.E.2d 386 (1988). Remoteness in time is less important on the issue of *modus operandi* when evidence of the other crime is admitted because it is so similar to the *modus operandi* of the crime being tried; such similarities permit a reasonable inference that the same person committed both crimes. *Id.* at 203, 362 S.E.2d at 857.

Applying these general principles to the present case, we hold that the trial court did not err. First, the two crimes meet the first prong of the test regarding similarity. The evidence establishes that each crime was committed in the early morning hours, a retail store was the object of the break-in, each establishment was entered through an almost identical hole in the back wall, and the same

STATE v. REID

[104 N.C. App. 334 (1991)]

tool was used to create the hole in the wall: a sledgehammer. In the Winston-Salem case, the sledgehammer was discovered at the hardware store; in the present case, the sledgehammer was discovered along the side of the road where defendant had slowed down to stop for the officers in pursuit.

Second, the two crimes were within the temporal proximity prong of the test. The lapse of approximately 11 months between the two alleged crimes was not so remote in time as to render the evidence inadmissible. When the purpose for which the evidence is being admitted is the *modus operandi* of the crime, remoteness in time usually goes to the weight of the evidence, not its admissibility. *Id.* It is reasonable to conclude that a defendant who has established a particular *modus operandi* will continue that same pattern whether or not there has been a long lapse of time between the crimes. *State v. Riddick*, 316 N.C. 127, 134, 340 S.E.2d 422, 427 (1986). "It is this latter theory which sustains the evidence's admiss[ibility]." *Id.* We have reviewed the cases cited by defendant on the issue of remoteness in time and find that they are not applicable to show defendant's *modus operandi*. All of the cases cited by defendant concerned other issues such as intent, identity or common plan or scheme.

Moreover, we find that the probative value of the admitted evidence was not outweighed by its prejudicial effect to defendant. Therefore, for the above reasons, we hold that defendant received a fair trial free from prejudicial error.

No error.

Judges COZORT and LEWIS concur.