STATE OF NORTH CAROLINA v. ROBERT LEE HOLMES

No. 9126SC1182

(Filed 20 April 1993)

1. **Searches and Seizures § 12 (NCI3d)— investigatory stop of car—reasonable suspicion of criminal activity**

    An officer had an articulable and reasonable suspicion that occupants of a car were engaged in criminal activity to justify his investigatory stop of the vehicle where he received a radio communication from a vice and narcotics officer that the other officer had made the following observations: defendant drove slowly into a neighborhood known for its violence and drugs; defendant engaged two different groups of people in conversation from the car and then went into a house at which the officer had previously made drug-related arrests; defendant then returned to the car after only a few minutes and lit a cigarette which he shared with the two passengers in the car until the cigarette was gone and the car filled with smoke, leading the officer to believe that the cigarette was a marijuana cigarette; defendant then placed a plastic bag in the trunk of the car and returned to the house for thirty seconds; and when defendant returned to the car, he carefully concealed an object underneath the driver's seat.

    **Am Jur 2d, Searches and Seizures § 70.**

2. **Searches and Seizures § 11 (NCI3d)— lawful investigatory stop—observation of drug paraphernalia—probable cause to search car**

    Where an officer who made a lawful investigatory stop of defendant's car observed two needles and syringes in a

passenger door compartment when he opened the door to question the passenger, and the officer arrested the passenger for possession of drug paraphernalia, officers had probable cause to search defendant's vehicle, including the area underneath the driver's seat where an officer had observed defendant place a bag he had obtained from a house known for drug-related activities.

**Am Jur 2d, Searches and Seizures § 70.**

3. **Evidence and Witnesses § 2479 (NCI4th) — denial of motion to sequester witnesses — no abuse of discretion**

The trial court did not abuse its discretion by denying defendant's motion to sequester the State's witnesses in a prosecution for narcotics offenses where the record does not support defendant's contention that officers who testified for the State tailored their testimony to that given by other officers.

**Am Jur 2d, Trial § 61.**

4. **Evidence and Witnesses § 117 (NCI4th) — possession of narcotics under driver's seat — passenger as dope dealer — exclusion of testimony**

In a prosecution for the possession of cocaine and heroin found under the front seat of defendant's car, testimony that a passenger in the car was a dope dealer was not admissible to show that the passenger committed the crime with which defendant was charged where defendant was observed placing a package under the front seat and this package was later found to contain cocaine and heroin, since testimony that a passenger was a dope dealer did not imply that the passenger possessed the narcotics found under the seat and was not inconsistent with defendant's guilt, especially when the passenger was never observed with the package and was sitting in the back seat of the vehicle. N.C.G.S. § 8C-1, Rules 401 and 404(b).

**Am Jur 2d, Evidence § 441.**

5. **Narcotics, Controlled Substances, and Paraphernalia § 114 (NCI3d) — possession of cocaine with intent to sell — possession of heroin — sufficiency of evidence**

The State's evidence was sufficient to support defendant's convictions for possession of cocaine with intent to sell and

STATE v. HOLMES

[109 N.C. App. 615 (1993)]

deliver and possession of a Schedule I controlled substance (heroin) where it tended to show that defendant was observed carrying a package from a house known for drug activities and placing it under the front seat of the car he was driving; a pouch containing twenty-eight baggies and two tin foil packages was later discovered under the driver's seat where defendant had placed this package; the baggies contained small amounts of cocaine and were tied with twist ties, and the tin foil packages contained heroin; and an officer stated his opinion, based on his extensive training in drug enforcement, that the baggies containing cocaine were packaged for street level sales.

**Am Jur 2d, Drugs, Narcotics, and Poisons § 47.**

**What constitutes illegal, constructive possession under 21 USCS § 841(a)(1), prohibiting possession of a controlled substance with intent to manufacture, distribute or dispense the same. 87 ALR Fed 309.**

6. **Appeal and Error § 410 (NCI4th)— instructions—failure to record—presumption of propriety**

The arguments to the jury are presumed proper where they were not recorded.

Appeal by defendant from judgment entered 18 July 1991 by Judge Marvin K. Gray in Mecklenburg County Superior Court. Heard in the Court of Appeals 4 February 1993.

On 18 July 1991, a jury found defendant guilty of one count of possession with intent to sell and deliver a controlled substance in violation of N.C. Gen. Stat. § 90-95(a)(1) and one count of possession of Schedule I controlled substances in violation of N.C. Gen. Stat. § 90-95(a)(3). From the judgment entered on this verdict, defendant appeals. For the reasons stated below, we find no error.

*Attorney General Lacy H. Thornburg, by Associate Attorney General John J. Aldridge, III, for the State.*

*Public Defender Isabel Scott Day, by Assistant Public Defender Anne Nicholson Hogewood, for defendant-appellant.*

ORR, Judge.

On 12 December 1990, Sergeant Terry Sult of the Charlotte Police Department arrested defendant after discovering a black

STATE v. HOLMES

[109 N.C. App. 615 (1993)]

zippered pouch containing baggies and tin foil packages of a powdered substance under the front seat of defendant's car. The baggies contained cocaine, and the tin foil contained heroin. Sult was the supervisor in charge of a drug surveillance unit on Wyatt and Person Streets in Charlotte, North Carolina. He stopped defendant's vehicle after hearing Officer William Holbrooke's broadcast of defendant's suspicious behavior.

The suspicious behavior of defendant observed by Holbrooke while he was on drug surveillance duty is as follows: On 12 December 1990, Holbrooke observed a white Pontiac Grand AM driving at a slow rate of speed down Wyatt Street. The car stopped beside a group of people standing on the side of the road, and the occupants of the car engaged the people in conversation. The car then backed up approximately seventy to seventy-five feet, and the occupants engaged another group of people in conversation. The car then proceeded back up Wyatt Street and onto Person Street where it stopped in front of a house familiar to Holbrooke as he has made other drug related arrests of people coming out of this house. After the car stopped in front of this house, three males exited the car and entered the house. At trial, Holbrooke identified the defendant as the driver of the car and as one of the three males who entered the house.

After approximately three to five minutes, defendant and the other two males exited the house and got back into the car. Holbrooke then observed defendant ignite and apparently inhale what appeared to be a cigarette and then pass it to the passenger. The passenger also appeared to inhale and then hand it to the occupant in the back seat. The three continued to pass it around until it went out and smoke filled the car. Holbrooke testified at trial that, based on his training, he felt like this was a marijuana cigarette.

After the cigarette went out, Holbrooke observed defendant walk back to the trunk, open the trunk, and place what appeared to be a plastic bag into the trunk and go back into the house. Defendant immediately returned from the house and carefully placed an object underneath the driver's seat. Defendant then drove off. Holbrooke testified he then radioed what he had observed to the other members of the surveillance unit, and Sergeant Sult and Officer Walker testified they heard this broadcast.

After hearing Holbrooke's broadcast, Sult stopped the car on Oaklawn Avenue and asked the defendant driver for his driver's

license, which he could not produce. Sult then asked defendant to step out of the car, and Sult searched the floorboard for weapons. Other officers arrived, including Officer Walker. Sult opened the passenger door to question the passenger, and he saw two needles and syringes in a compartment on the door. The passenger was then arrested for possession of these items. Officer Walker then conducted a thorough search of the car. Sult testified that the defendant consented to this search.

During the search, Walker discovered a pouch containing twenty-eight baggies of cocaine and two tin foil packages of heroin underneath the driver's seat. Defendant was then arrested, and on 8 April 1991 the Mecklenburg County Grand Jury indicted him for possession of cocaine with intent to sell and deliver and possession of heroin. On 15 July 1991, defendant moved to suppress the evidence seized by a warrantless search, which the trial court denied. On 17 July 1991, defendant filed a motion to exclude witnesses for the State from the trial pursuant to N.C. Gen. Stat. § 15A-1225, which the trial court denied. On 18 July 1991, the jury found defendant guilty of these charges. From this verdict, defendant appeals.

I.

[1] Defendant first assigns error to the denial of his motion to suppress the evidence seized from the warrantless search of his vehicle, based on the contention that the officer did not have a reasonable suspicion that the occupants were engaged in criminal activity to justify his stop of the vehicle. We find no error.

"It is well-settled law that a police officer may make a brief investigative stop of a vehicle if justified by specific, articulable facts giving rise to a reasonable suspicion of illegal activity." *State v. Reid*, 104 N.C. App. 334, 342, 410 S.E.2d 67, 71 (1991), *dismissal denied, disc. review allowed*, 331 N.C. 121, 414 S.E.2d 765 (1992) (citing *Alabama v. White*, 496 U.S. 325 (1990)). "We believe the standard set forth [for stopping an individual] requires only that the officer have a 'reasonable' or 'founded' suspicion as justification for a limited investigative seizure." *State v. Thompson*, 296 N.C. 703, 706, 252 S.E.2d 776, 779, *cert. denied*, 444 U.S. 907 (1979).

> 'Reasonable suspicion is a less demanding standard than probable cause not only in the sense that reasonable suspicion can be established with information that is different in quantity or content than that required to establish probable cause, but

also in the sense that reasonable suspicion can arise from information that is less reliable than that required to show probable cause. . . .'

*Reid,* 104 N.C. App. at 342, 410 S.E.2d at 71-2 (quoting *Alabama,* at 330). Further, the evidence "collected must be seen and weighed not in terms of library analysis by scholars, but as understood by those versed in the field of law enforcement." *United States v. Cortez,* 449 U.S. 411, 418 (1981).

In the case *sub judice,* defendant argues Sergeant Sult unlawfully stopped the defendant's car because he did not have a reasonable suspicion that the occupants of the vehicle might be engaged in or connected with criminal activity. We disagree.

When viewed in their totality, the objective observations made by Holbrooke constitute sufficient articulable and reasonable suspicion to make Sult's stop of defendant's car legal. Holbrooke, a trained officer of the vice and narcotics unit of the Charlotte Police Department, observed defendant driving slowly into a neighborhood known for its violence and drugs. The defendant then engaged two different groups of people in conversation from the car and went inside of a house personally known to Holbrooke because he had made other drug related arrests there. The defendant then returned to the car after only a few minutes and lit a single cigarette which he shared with the other two passengers until the cigarette was gone and the car filled with smoke. Based on his training, Holbrooke felt these actions suggested the cigarette was a marijuana cigarette. Defendant then placed a plastic bag in the trunk of the car and returned back into the house alone for about thirty seconds. When defendant returned to the car, he carefully concealed an object underneath the driver's seat. Based on these observations, which Holbrooke subsequently relayed over the radio, Sult stopped defendant in his car.

We hold these circumstances create sufficient articulable and reasonable suspicion to make Sult's stop of defendant's car legal. *See, Thompson,* 296 N.C. at 707, 252 S.E.2d at 779 (holding officers had a justifiable reasonable suspicion that the occupants of a van might be engaged in criminal activity and these officers were within the limits of the Fourth Amendment in approaching this van to seek identification where the van was in an isolated location in a public place at a late hour with considerable activity around it); *See also, State v. Tillett,* 50 N.C. App. 520, 524, 274 S.E.2d

361, 364, *appeal dismissed by*, 302 N.C. 633, 280 S.E.2d 448 (1981) (holding officers had a justifiable reasonable suspicion that the occupants of a vehicle might be engaged in criminal activity and that these officers were within the limits of the Fourth Amendment in making an investigatory stop of the vehicle when the officers saw the vehicle drive down a one lane dirt road in a heavily wooded, seasonably unoccupied area in the late evening, in rainy weather where reports of "firelighting" deer had occurred, and where the officers knew a number of seasonal residences were on the dirt road, only one of which was occupied at the time).

II.

[2] Next, defendant contends that the trial court erred by denying his motion to suppress evidence because the officer did not have probable cause to conduct a warrantless search of defendant's vehicle. We disagree.

Our Supreme Court stated in *State v. Simmons*, 278 N.C. 468, 471, 180 S.E.2d 97, 99 (1971), "[A] police officer in the exercise of his duties may search an automobile ... without a search warrant when the existing facts and circumstances are sufficient to support a reasonable belief that the automobile . . . carries contraband materials." If an officer conducts a warrantless search and seizure based on probable cause, " 'that is, upon a belief, reasonably arising out of the circumstances known to the seizing officer, that an automobile or other vehicle contains that which by law is subject to seizure and destruction, the search and seizure are valid.' " *State v. Martin*, 97 N.C. App. 19, 28, 387 S.E.2d 211, 216 (1990) (quoting *United States v. Ross*, 456 U.S. 798, 805 (1982) ).

In *State v. Martin, supra*, an officer stopped a vehicle for a routine traffic violation in which the defendant was a passenger. The officer noticed empty vials between the driver and passenger seats. The officer had seen similar vials used in the sale of cocaine. After seeing the vials, the officer told the defendant that he had probable cause to search the car, and no protest ensued. This Court held that after the lawful stop of the vehicle, the presence of these vials which were recognized by the officer as vials used in trafficking drugs, developed the probable cause required to search defendant's vehicle.

In the case *sub judice*, following the lawful stop of defendant's car, Sergeant Sult opened the passenger door to question the

passenger, and he observed two needles and syringes in a small compartment on the car door. Under N.C. Gen. Stat. § 90-113.21(a)(11) (1990), these needles and syringes come within the definition of drug paraphernalia. Sult arrested the passenger for possession of these items, and Officer Walker conducted a thorough search of the vehicle. There is no evidence in the record that shows any protest ensued; in fact, Sult testified that defendant consented to the search. As in *Martin*, the presence of drug paraphernalia in defendant's vehicle, following a lawful stop of the vehicle, developed the probable cause needed to make Officer Walker's search of defendant's vehicle lawful.

Defendant goes on to argue, however, that Officer Walker did not have probable cause to search the area underneath the driver's seat. We disagree.

"If probable cause justifies the search of a lawfully stopped vehicle, it justifies the search of every part of the vehicle and its contents that may conceal the object of the search." *Ross*, 456 U.S. at 825; *Martin*, 97 N.C. App. at 28, 387 S.E.2d at 216. In the case *sub judice*, we have already held that probable cause existed to search the vehicle. The officers were searching for more contraband based on the drug paraphernalia found in the front seat and on observations made by officers prior to the search. Holbrooke had observed the defendant place a bag, which he had obtained from inside a house known for drug related activities, under the driver's seat. The area under the driver's seat would be an area that could conceal the object of this search. We hold, therefore, the search of the vehicle was lawful.

III.

[3] Next, defendant argues the trial court abused its discretion by denying his motion to sequester the State's witnesses. We disagree.

"Upon motion of a party the judge may order all or some of the witnesses other than the defendant to remain outside of the courtroom until called to testify, . . . ." N.C. Gen. Stat. § 15A-1225 (1988). "A motion to sequester witnesses is addressed to the sound discretion of the trial court, and the court's ruling on the motion will not be disturbed in the absence of a showing of abuse of that discretion." *State v. Batts*, 93 N.C. App. 404, 410, 378 S.E.2d 211, 214 (1989). "The aim of sequestration is two-

fold: First, it acts as a restraint on witnesses tailoring their testimony to that of earlier witnesses, and second, it aids in detecting testimony that is less than candid." *State v. Harrell*, 67 N.C. App. 57, 64, 312 S.E.2d 230, 236 (1984). "Due process does not automatically require separation of witnesses who are to testify to the same set of facts." *Id.*

In the case *sub judice*, the defendant argues that the trial court should have sequestered the State's witnesses because the State's entire case rests on the testimonies of three officers, Sult, Walker, and Holbrooke, who all three could tailor their testimony by hearing each other testify. In his brief, the defendant states:

It is obvious from the record, that had Officer Walker and [sic] not been able to hear and tailor his testimony to that of Officers Holbrooke and Sult, the defendant would have been better able to cross-examine him. Further, both Sult and Walker were able to bolster the testimony of Holbrooke by conforming their descriptions of the [sic] Holbrooke's radio broadcast to the testimony given in court by Holbrooke.

Defendant fails to point out support for these contentions in the record. Additionally, we do not find support for these contentions in our review of the record. The record shows no abuse of discretion in the trial court's decision to deny defendant's motion to sequester the State's witnesses. We accordingly overrule this assignment of error.

IV.

[4] The defendant also assigns error to the trial court's refusal to allow defendant's witness to testify that another passenger in the vehicle was a dope dealer. We find no error.

Defendant argues that the testimony of a passenger in the vehicle that another passenger in the vehicle was a dope dealer was relevant to the question of whether defendant possessed the contraband found in the vehicle and that the trial court's failure to allow this statement greatly prejudiced the defendant. At trial, the defendant questioned a passenger in the vehicle as to why he asked the other passenger if he had any drugs on him once he realized that the police were following them. The State objected to the witness answering this question, and the trial court allowed the witness to write down his answer. The witness wrote down, "Becaed [sic] hem [sic] was a doup [sic] dealer." The trial court

then sustained the State's objection and did not allow the answer written down by the witness into evidence. Defendant argues this testimony was relevant to implicate the other passenger in the crime for which defendant was charged and was inconsistent with defendant's guilt such that it was admissible under Rules 401 and 404(b) of the North Carolina Rules of Evidence. Additionally, defendant contends that where the State relied on a theory of constructive possession to show that defendant possessed the contraband, the exclusion of this testimony was prejudicial error such that defendant is entitled to a new trial. We disagree.

Defendant relies on *State v. Cotton*, 318 N.C. 663, 351 S.E.2d 277 (1987), to support his contention. In *Cotton*, the defendant was charged with burglary, first degree rape and first degree sexual offense. The trial court excluded evidence that three other break-ins and sexual assaults occurred on the same night, committed in the same manner, near the site of the crime for which the defendant was charged. "The *modus operandi* in each case was very similar." *Id.* at 667, 351 S.E.2d at 280.

On appeal, our Supreme Court applied N.C.R. Evid. 401 and 404(b) to allow the evidence. Rule 404(b) states:

Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake, entrapment or accident.

The Court applied this Rule to allow the evidence, stating, "Certainly Rule 404(b) must be applied . . . to allow a defendant to introduce evidence of very similar crimes of another, when such evidence tends to show that the other person committed the crime for which the defendant is on trial." *Cotton*, 318 N.C. at 666, 351 S.E.2d at 279.

Additionally, the Court applied N.C.R. Evid. 401 to allow the evidence. The Court held, "The admissibility of evidence of the guilt of one other than the defendant is governed now by the general principle of relevancy [found in Rule 401]." *Id.* at 667, 351 S.E.2d at 280. Rule 401 states, " 'Relevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." The Court

in *Cotton* stated, however, that "[u]nder Rule 401 such evidence must tend *both* to implicate another *and* be inconsistent with the guilt of the defendant." *Cotton*, 318 N.C. at 667, 351 S.E.2d at 279-80. Further, "[e]vidence that another committed the crime for which the defendant is charged generally is relevant and admissible as long as it does more than create an inference or conjecture in this regard." *Id.* at 667, 351 S.E.2d at 279.

In the case *sub judice*, the defendant argues the excluded testimony is admissible under N.C.R. Evid. 401 and 404(b) based on the holding in *Cotton*. The excluded evidence in the present case fails, however, to meet the requirements set out in *Cotton* for admissibility. Unlike the evidence in *Cotton* which pertained to other crimes committed that tended to show a common *modus operandi* of an individual other than the defendant such that the other individual could have committed the crime for which defendant was charged, the evidence excluded in the present case fails to show a common *modus operandi* of another or to go towards proving any of the other exceptions in Rule 404(b), and it fails to create more than an inference or conjecture that someone other than the defendant possessed the contraband. In light of the evidence that the defendant in the present case brought a package out of the house and placed it under the front seat of the car and that subsequently this package was found under the front seat of the car containing the contraband, the testimony that another passenger is a dope dealer does not imply that this passenger possessed the contraband found under the front seat, nor is it inconsistent with the guilt of the defendant, especially when this passenger was never observed with the package and when he was sitting in the back seat of the vehicle. Accordingly, we overrule this assignment of error.

V.

[5] Next, the defendant assigns error to the trial court's denial of his motion to dismiss both of the charges against him based on the contention that insufficient evidence exists to support these charges. We find no error.

> In ruling on a motion to dismiss, the trial court must view the evidence in the light most favorable to the State, giving it the benefit of all reasonable inferences which can be drawn therefrom. If there is "substantial evidence" of each element of the charged offense, the motion should be denied.

Substantial evidence is that amount of evidence which a reasonable mind might accept as adequate to support a conclusion.

*State v. Rich*, 87 N.C. App. 380, 382, 361 S.E.2d 321, 323 (1987) (citations omitted).

In the present case, defendant was charged and convicted of one count of possession with intent to sell and deliver a controlled substance and one count of possession of Schedule I controlled substances. Defendant argues insufficient evidence exists to prove these charges.

N.C. Gen. Stat. § 90-87(5) defines a "Controlled substance" as "a drug, substance, or immediate precursor included in Schedules I through VI of this Article." N.C. Gen. Stat. § 90-89(b)(10) defines heroin as a Schedule I controlled substance, and N.C. Gen. Stat. § 90-90(a)(4) defines cocaine as a Schedule II controlled substance.

In the present case, Officer Holbrooke observed defendant carry a package from a house known for housing drug related activities and place it under the front seat of the car he was driving. Subsequently, Officer Walker discovered a pouch containing twenty-eight baggies and two tin foil packages underneath the driver's seat of the car where defendant had placed this package. The baggies contained small amounts of cocaine in the baggie corners and were tied with twist ties, and the tin foil packages contained heroin. Sergeant Sult testified that, based on his extensive training in drug enforcement, the baggies containing cocaine were packaged for street level sales.

In *State v. Williams*, 71 N.C. App. 136, 140, 321 S.E.2d 561, 564 (1984), this Court held, "The method of packaging a controlled substance, as well as the amount of the substance, may constitute evidence from which a jury can infer an intent to distribute." Additionally, in *State v. Dow*, 70 N.C. App. 82, 85, 318 S.E.2d 883, 885-86 (1984), this Court held:

A defendant has possession of a controlled substance when he has both the power and intent to control its disposition or use. Possession may be either actual or constructive. Constructive possession exists when there is no actual personal dominion over the controlled substance, but there is an intent and capability to maintain control and dominion over it. . . .

STATE v. HOLMES

[109 N.C. App. 615 (1993)]

> . . . An inference of constructive possession can . . . arise
> from evidence which tends to show that a defendant was the
> custodian of the vehicle where the controlled substance was
> found. . . . Moreover, power to control the automobile where
> a controlled substance was found is sufficient, in and of itself,
> to give rise to the inference of knowledge and possession suffi-
> cient to go to the jury.

(Citations omitted.) Thus, based on the holdings in *Dow* and *Williams*, and viewing the evidence in the light most favorable to the State, sufficient evidence exists to go to the jury on the charges of possession with intent to sell and deliver a controlled substance and possession of Schedule I controlled substances.

Defendant argues, however, that *State v. McLaurin*, 320 N.C. 143, 357 S.E.2d 636 (1987), applies to require more evidence than the State presented to get to the jury on the issue of possession. We disagree. The Court in *McLaurin* stated, "It is not necessary to show that an accused has exclusive control of the premises where [drug] paraphernalia are found, but 'where possession . . . is nonexclusive, constructive possession . . . may not be inferred without other incriminating circumstances.'" *Id.* at 146, 357 S.E.2d at 638. In *McLaurin* the only evidence linking the defendant to possession of drugs was that she resided in the house with others where drugs were found. Unlike the evidence in *McLaurin*, the evidence in the present case shows that defendant was observed carrying a package from a house known for housing drug related activities and placing it under the front seat of the car where the package containing the drugs was found. Additionally, the present case deals with a car driven by the defendant, not a house where defendant resides with others. The evidence in the present case is, therefore, greater than the evidence in *McLaurin* on the issue of drug possession, and we hold it was sufficient to go to the jury. Accordingly, defendant's assignment of error is overruled.

VI.

[6] Finally, the defendant argues that the trial court erred by overruling his objection to an inflammatory statement made by the prosecutor in his closing argument. "Assignments of error concerning jury arguments by counsel at trial are properly presented for review by this Court when such arguments by counsel are preserved and brought forward on appeal." *State v. Arnold*, 314 N.C. 301, 308, 333 S.E.2d 34, 39 (1985). In the present case, the

arguments to the jury were not recorded; we must, therefore, presume they were proper. Accordingly, we overrule this assignment of error.

No error.

Judges EAGLES and WYNN concur.