STATE OF NORTH CAROLINA v. ERIC A. HUDSON

No. 9026SC910

(Filed 20 August 1991)

1. **Searches and Seizures § 12 (NCI3d) — temporary tag illegible — stopping of vehicle lawful**

    Testimony by an officer that the 30-day temporary tag on the car which defendant was driving was illegible because both the expiration date and the numbers were "faded out" was sufficient competent evidence from which to conclude that the officer had an articulable and reasonable suspicion that the tag may have been more than 30 days old in violation of N.C.G.S. § 20-79.1(h) and that the vehicle may have been improperly registered in violation of N.C.G.S. § 20-50, and defendant's vehicle was therefore lawfully stopped.

    **Am Jur 2d, Searches and Seizures §§ 39, 43.**

STATE v. HUDSON

[103 N.C. App. 708 (1991)]

**2. Searches and Seizures § 9 (NCI3d) — failure to produce driver's license and registration card — warrantless arrest proper**

Failure of defendant to produce a driver's license and a registration card after an officer lawfully stopped his vehicle gave officers sufficient probable cause to place defendant under arrest for these offenses.

**Am Jur 2d, Arrest § 43; Searches and Seizures § 43.**

**3. Searches and Seizures § 9 (NCI3d) — failure to produce driver's license and vehicle registration — officer's request of defendant to step outside vehicle — request proper**

An officer was justified in asking defendant to step out of his car after he failed to produce a driver's license or vehicle registration, since the safety of an officer exposed to heavy traffic during a stop for a traffic violation is a legitimate concern and justifies the officer's request that the driver step out of the vehicle to a place nearby where the inquiry may be pursued with greater safety.

**Am Jur 2d, Arrest § 43; Searches and Seizures § 43.**

**4. Searches and Seizures § 12 (NCI3d) — auto passenger — suspicion of hidden weapon — officer's request to step out of car proper**

Because of an automobile passenger's lack of identification, an unmoved newspaper spread fully across her lap for five to ten minutes, and the likely inability to read because of the darkness, the trial court had sufficient competent evidence to conclude that an officer possessed an articulable and reasonable suspicion that the passenger may have been trying to hide a weapon, and the officer could properly ask the passenger to step out of the car.

**Am Jur 2d, Arrest § 43; Searches and Seizures §§ 43, 45, 96.**

**5. Searches and Seizures § 11 (NCI3d) — auto passenger trying to hide weapon — request to step out of car — reasonableness — gun protruding from briefcase — plain view doctrine — further search of briefcase — contraband admissible**

Where an officer had an articulable and reasonable suspicion that a passenger may have been trying to hide a weapon, and he properly asked her to step out of the car, the officer properly seized, under the plain view doctrine, a gun which he had observed partially sticking out of a briefcase lying

STATE v. HUDSON

[103 N.C. App. 708 (1991)]

on the floorboard of the automobile; furthermore, the officer was justified in conducting a more thorough search of the briefcase for his own protection, and contraband other than weapons found in the briefcase did not have to be suppressed.

**Am Jur 2d, Searches and Seizures § 88.**

**Validity of seizure under Fourth Amendment "plain view" doctrine — Supreme Court cases. 75 L. Ed. 2d 1018.**

6. **Searches and Seizures § 11 (NCI3d) — search of briefcase in another's possession — defendant's rights not infringed**

Defendant failed to show that the search and seizure of a "purse/briefcase" in the possession of a passenger in his automobile infringed upon his own personal rights under the Fourth Amendment, and defendant's motion to suppress its contents was properly denied by the trial court.

**Am Jur 2d, Searches and Seizures §§ 85, 97.**

APPEAL by defendant from order entered 16 January 1990 by *Judge Samuel A. Wilson III* and judgment entered 24 April 1990 by Judge Robert M. Burroughs in MECKLENBURG County Superior Court. Heard in the Court of Appeals 8 April 1991.

Defendant Eric A. Hudson was indicted for trafficking in cocaine by transportation and possession in violation of G.S. 90-95(h), possession of drug paraphernalia in violation of G.S. 90-113.22, and carrying a concealed weapon in violation of G.S. 14-269. On 9 October 1989, defendant filed a motion to suppress evidence found during the warrantless search of the automobile he was driving on 7 January 1989. After hearing testimony and arguments on defendant's motion to suppress, the trial court made the following findings of fact and conclusions of law:

1. That on or about January 7, 1989, Charlotte Police Officer William R. Thompson operating a marked Police vehicle and wearing a Police uniform, observed a 1982 white Oldsmobile, Northbound on I-85; said 1982 Oldsmobile Cutlass had a 30-day tag and Officer Thompson could not read the expiration date, pulled in behind this vehicle, turned on his blue light and the vehicle pulled over approximately two miles from Beatties Ford Road. He asked the driver whom Officer Thompson identified to the Court as the Defendant, Eric A. Hudson, for

Driver's License and Registration; the Defendant Hudson stated he did not have either.

2. Defendant Hudson informed Officer Thompson that the white Oldsmobile Cutlass was a friend's vehicle; Officer Thompson requested Eric Hudson to step outside, instructed him to get into the Police vehicle while he checked the Vehicle Registration, while he checked with Department of Motor Vehicles. The Defendant informed Officer Thompson that his name was Eric Antonio Hudson.

3. Officer Mullhall came up behind Officer Thompson and asked Officer Thompson if he could assist. Officer Thompson asked him to run the vehicle identification number. Officer Thompson observed, Officer Mullhall speaking to the female seated in the front passenger seat of the white Oldsmobile although his main attention was to the driver. Officer Thompson upon finding that Defendant Hudson did not have a Driver's License, intended to cite him for No Operators License. His intention was not to place him under arrest. Defendant Hudson gave Officer Thompson no reason to search his vehicle, no consent to search his vehicle. Officer Thompson had no Warrant to search his vehicle.

4. The white Oldsmobile was not stolen, the VIN check later did not reveal that it was stolen.

5. Officer Thompson did not intend to cite Defendant Mobley and he observed no contraband or gun in plain view.

6. Officer P. J. Mullhall, Charlotte Police Officer for two and a half years on January 7, 1989, arrived at the scene in which Officer Thompson stopped the white Oldsmobile at approximately 5:45 p.m. He came up and saw Defendant Hudson in the back of Thompson's car. Thompson asked him to run the VIN number. He went to the white Oldsmobile and was writing down the VIN number. He asked the Defendant Mobley while he was at the car if she had an I.D. She said, "No." He walked up on the passenger, he observed at this time a newspaper in her lap. He then, after running the VIN check, walked up on the passenger side of the car. He again asked for identification. He was concerned because of the newspaper open on her lap, that Officer [possessed a] reasonable, projected feared [sic] that there might be a weapon beneath the newspaper

due to the placement of the newspaper, the newspaper was lying in her lap and not at an angle in which one would expect one to read a newspaper. To eliminate and alleviate his concern for his safety, he asked her to step out of the vehicle. At this time Defendant Mobley exited the vehicle with a purse/brief-case. The Officer also observed in plain view another briefcase on the floorboard of the vehicle with the butt of a gun out of it. Officer Mullhall then opened this briefcase in the vehicle and observed two handguns, one .41 magnum and a .357 magnum, a sum of money and two boxes of Manitol [sic]. Officer Mullhall then took the briefcase way [sic] from the Defendant Mobley that she had on her person and found within it two bags of what has been stipulated to be cocaine and a .22 caliber revolver. Officer [sic] Mobley did not say anything to Officer Mullhall at this time. Although when he did ask her if the briefcase she was holding was hers, she said, "Yes." He then placed her under arrest and advised Officer Thompson what he had.

7. Defendant [sic] Thompson then told Officer Mullhall that he wanted his money. Officer Mullhall asked if he was "owning up" to being the owner of the briefcase in the floor and Defendant Hudson said "yes." Other than these statements, no statements were made after [Defendants were] placed under arrest. At the time Officer Mullhall was getting the VIN number, it was dusk.

8. At the time that he arrived at the scene where Thompson had stopped, at the time Officer Mullhall arrived at the scene where the Oldsmobile was stopped, some cars had lights on and some didn't. Officer Mullhall, the first time he was at the car could observe the newsprint on [sic] the vehicle. After he ran the VIN check, the vehicle came back not stolen and was registered under a current 30-day tag. Officer Mullhall observed nothing in plain view until the newspaper was moved.

Officer Mullhall both when he was first getting the VIN number off the vehicle and when he again approached the car to ask Mobley, Defendant Mobley for her I. D., was in fear that she was hiding something although she remained in the car. Officer Mullhall also noted that the light was not on and the newspaper was still in her lap. Officer Mullhall took approximately five to ten minutes to do the VIN check

from the time he got the VIN number until he re-approached the car. After Defendants Mobley and Hudson were arrested and taken to Charlotte Law Enforcement Center, Officer McCain went with Defendant Mobley to the rest room after being requested to do so by Officers investigating the case. This, of course, was Charlotte Police procedure to get female Officers to go with Defendants to the rest room. She removed her handcuffs and her jacket and patted her down to make sure she had no weapon. Defendant Mobley went into the stall but did not flush when she was finished because she had told Officer McCain she was not sure if she was supposed to do so. Officer McCain did not observe anything in the commode in the nature of contraband. Following this, Officer McCain told Defendant Mobley that she was going to search her coat which she did so and then she instructed Defendant Mobley to pull out the front part of her bra. Officer demonstrated this and when Defendant Mobley pulled out her bra, a white bag later determined being cocaine fell out. Defendant Mobley stated she did not know where that, that the bag was in there. Officer McCain patted her down in the rest room for her own safety and further search of her coat and of her bra were pursuant to a lawful arrest.

WHEREFORE, based on the forgoing [sic] Findings of Fact, the Court makes the following Conclusions of Law:

1. That the Defendant Hudson along with Defendant Mobley were lawfully stopped by Officer W. R. Thompson.

2. That Officer P. J. Mullhall had reasonable, articuable [sic] suspicion to ask the Defendant Hudson [sic] to exit the vehicle.

3. That the butt of the gun was in plain view following Defendant Mobley exiting the vehicle.

4. That Officer Mullhall had a reasonable belief that the Defendant Hudson [sic] might pose a threat to his safety and the safety of Officer Thompson. That the Defendant Hudson [sic] was in close proximity to a deadly weapon at the time that Officer Mullhall formed his belief that she could be dangerous in getting control of the weapon. That the search of the briefcase on the person of Defendant Hudson [sic] was made to ensure Officer Mullhall and Thompson's physical safety.

5. That cocaine seized from Ms. Mobley following Officer McCain's search was pursuant to a lawful arrest.

6. And, that the statements that Defendant Mobley made concerning the cocaine were not the fruit of unconstitutional arrest or an unconstitutional search.

WHEREFORE, based on the foregoing Findings of Fact and Conclusion of Law, it is Ordered, Adjudged and Decreed that Defendant Hudson's Motion to Suppress Evidence seized is DENIED.

The motion to suppress was denied on 16 January 1990. After the State presented its evidence at trial on 23-24 April 1990, defendant pled guilty to all charges pending against him and pursuant to G.S. 15A-979(b) reserved his right to appeal the denial of his motion to suppress. On 24 April 1990, defendant was sentenced to serve eleven years in prison and was fined $50,000. Defendant appeals.

*Attorney General Lacy H. Thornburg, by Associate Attorney General Joseph P. Dugdale, for the State.*

*Goodman, Carr, Nixon & Laughrun, by George V. Laughrun II, for defendant-appellant.*

EAGLES, Judge.

Defendant argues that the trial court erred in denying his motion to suppress. Defendant contends that the trial court erred in concluding that the stop and the subsequent search were constitutionally permissible. After careful review of the record, we find no error.

When reviewing a trial court's order denying a motion to suppress, the scope of appellate review is "strictly limited to determining whether the trial judge's underlying findings of fact are supported by competent evidence, in which event they are conclusively binding on appeal, and whether those factual findings in turn support the judge's ultimate conclusions of law." *State v. Cooke*, 306 N.C. 132, 134, 291 S.E.2d 618, 619 (1982).

When the police seize evidence from a vehicle, the first inquiry involves ascertaining the lawfulness of the activity by which the police obtained access to the vehicle and entered it. *State v. Gray*, 55 N.C. App. 568, 286 S.E.2d 357 (1982). Defendant contends that

**STATE v. HUDSON**

[103 N.C. App. 708 (1991)]

the police lacked reasonable suspicion of illegal conduct to make the stop. Defendant further argues that the investigatory stop was merely a pretext for an unlawful exploratory search and that the evidence arising from this search should be suppressed. We disagree.

[1]  On this record the evidence is adequate to support the trial court's conclusion that the defendant's vehicle was lawfully stopped by Officer Thompson.

> A police officer may conduct a brief investigative stop of a vehicle where justified by specific, articulable facts which give rise to a reasonable suspicion of illegal conduct. *See, e.g., United States v. Brignoni-Ponce*, 422 U.S. 873, 880, 95 S.Ct. 2574, 2580, 45 L.Ed.2d 607, 616 (1975); *Terry v. Ohio*, 392 U.S. 1, 27, 88 S.Ct. 1868, 1883, 20 L.Ed.2d 889, 909 (1968). However, police may not make *Terry*-stops merely on the pretext of a minor traffic violation. *United States v. Smith*, 799 F.2d 704, 710-11 (11th Cir. 1986).
>
> In determining the traffic stop was pretextual, the trial court should look at what a reasonable officer *would* do rather than what an officer validly *could* do. *Id.* [Emphasis in original.]

*State v. Morocco*, 99 N.C. App. 421, 427, 393 S.E.2d 545, 548 (1990). The officer testified at the hearing that the 30-day temporary tag was illegible because both the expiration date and the numbers were "faded out." G.S. 20-79.1(e) states that the date of issuance and expiration are to appear "clearly and indelibly on the face of each temporary registration plate." *See* G.S. 20-79.1(k), 20-63(c). From this testimony, the trial court had sufficient competent evidence from which to conclude that the officer had an articulable and reasonable suspicion that the tag may have been more than thirty days old in violation of G.S. 20-79.1(h) and that the vehicle may have been improperly registered with the Department of Motor Vehicles in violation of G.S. 20-50. A violation of either G.S. 20-50 or G.S. 20-79.1 is a misdemeanor offense. G.S. 20-176(a). *See State v. Gray*, 55 N.C. App. 568, 286 S.E.2d 357 (1982). Defendant's reliance on *Delaware v. Prouse*, 440 U.S. 648, 99 S.Ct. 1391, 59 L.Ed.2d 660 (1979) is misplaced. In *Prouse*, the Court held that an articulable and reasonable suspicion that an automobile was not registered was a valid ground for stopping an automobile and detaining the driver in order to check his driver's license and vehicle registration. *Id.* at 663, 99 S.Ct. at 1401, 59 L.Ed.2d at 673.

[2]   Immediately after stopping defendant's vehicle here, Officer Thompson asked defendant for his driver's license and for the vehicle's registration. "Any person operating or in charge of a motor vehicle, when requested by an officer in uniform . . . who shall refuse, on demand of such officer . . . to produce his license and exhibit same to such officer . . . for the purpose of examination . . . shall be guilty of a misdemeanor." G.S. 20-29. Defendant stated that he did not have a driver's license. Operating a motor vehicle without being licensed by the Division of Motor Vehicles is a misdemeanor. G.S. 20-7(a), (o). Failure to carry one's license "at all times while engaged in the operation of a motor vehicle" is also a misdemeanor. G.S. 20-7(n), (o). Accordingly, the officers had sufficient probable cause to place defendant under arrest for these violations. See U.S. v. Dixon, 729 F. Supp. 1113, 1116 (W.D.N.C. 1990). Defendant stated that he did not have the vehicle registration card because the vehicle belonged to a friend. A registration card must be carried "at all times . . . in the vehicle to which it refers" and must be displayed "upon demand" of the officer. G.S. 20-57(c). Failure to comply with G.S. 20-57 is also a misdemeanor. G.S. 20-176(a). The faded condition of the temporary tag combined with the failure of the defendant to produce his driver's license and the vehicle's registration was enough to create an articulable and reasonable suspicion that the vehicle might have been stolen.

[3]   We believe that the officer was also justified in asking the defendant to step out of his car after he failed to produce a driver's license or vehicle registration. The officer testified that there was a considerable amount of traffic on I-85 and that he asked the defendant to sit in the police car "so I could run his name through D.M.V. for my safety because it was dangerous on 85." The safety of an officer exposed to heavy traffic during a stop for a traffic violation is a legitimate concern and justifies the officer's request that the driver step out of the vehicle to a place nearby where the inquiry may be pursued with greater safety. Pennsylvania v. Mimms, 434 U.S. 106, 98 S.Ct. 330, 54 L.Ed.2d 331 (1977) (per curiam). See State v. Morocco, 99 N.C. App. 421, 393 S.E.2d 545 (1990). Furthermore, "out of a concern for the safety of the police, the Court has held that officers may, consistent with the Fourth Amendment, exercise their discretion to require a driver who commits a traffic violation to exit the vehicle even though they lack any particularized reason for believing the driver possesses a

weapon." *New York v. Class*, 475 U.S. 106, 115, 106 S.Ct. 960, 967, 89 L.Ed.2d 81, 91 (1986).

[4]   After defendant got out of the car, Officer Thompson asked Officer Mullhall to go to defendant's car and write down the vehicle identification number (VIN). Automobiles sold in the United States are marked with a unique identifying number which must be placed in a particular location on the automobile. *See* 49 C.F.R. 571.115 (1990). This number is used in a computer check to determine if the vehicle has been reported as stolen. An officer who has lawfully stopped a vehicle may locate and examine this number due to its importance and to the lack of a significant privacy interest in the number itself. *New York v. Class*, 475 U.S. at 111-14, 106 S.Ct. at 964-66, 89 L.Ed.2d at 88-90.

During the time Officer Mullhall was writing down the VIN, he noticed the passenger in the front seat with a newspaper opened fully and spread across her lap. The officer testified that his suspicion was aroused because it was dusk at this time and the newspaper was not being held at an angle suitable for reading. Officer Mullhall asked to see the passenger's identification. The passenger replied that she had no identification. After he completed the computer check on the VIN, Officer Mullhall returned to again ask the passenger if she had any identification. The officer testified that upon his return to the vehicle "[s]he was still sitting up there with the newspaper unfolded on her lap. Now, it takes time to run the VIN . . . it was close to darkness with no street lights on. The dome light was not on in the car." The officer also testified there was not enough light to read the newspaper at this time and that just minutes earlier he had had to use a flashlight to read the number on the VIN plate.

Based on his suspicion that the passenger may have been hiding a weapon under the newspaper, Officer Mullhall testified that he feared for his own safety and asked the passenger to step out of the car. "[P]olice may order persons out of an automobile during a stop for a traffic violation, and may frisk those persons for weapons if there is a reasonable belief that they are armed and dangerous." *Michigan v. Long*, 463 U.S. 1032, 1047-48, 103 S.Ct. 3469, 3480, 77 L.Ed.2d 1201, 1219 (1983). Furthermore, we note that the Court stated in *Terry* that

[t]he officer need not be absolutely certain that the individual is armed; the issue is whether a reasonably prudent man in

the circumstances would be warranted in the belief that his safety or that of others was in danger. . . . And in determining whether the officer acted reasonably in such circumstances, due weight must be given . . . to the specific reasonable inferences which he is entitled to draw from the facts in light of his experience.

*Id.* at 27, 88 S.Ct. at 1883, 20 L.Ed.2d at 909 (citations omitted). Because of the passenger's lack of identification, the unmoved newspaper spread fully across her lap for five to ten minutes, and the likely inability to read because of the darkness, the trial court had sufficient competent evidence to conclude that Officer Mullhall possessed an articulable and reasonable suspicion that the passenger may have been trying to hide a weapon.

[5] Officer Mullhall testified that as defendant Mobley was stepping out of the car, he observed the butt of a gun sticking out of a briefcase lying on the floorboard of the automobile. We conclude from the record before us that the evidence in question was properly seized under the "plain view" doctrine.

"When an officer's presence at the scene is lawful (and at least if he did not anticipate finding such evidence), he may, without a warrant, seize evidence which is in plain sight and which he reasonably believes to be connected with the commission of a crime, even though the 'incident to arrest' doctrine would not apply; and such evidence is admissible."

*State v. Bagnard*, 24 N.C. App. 54, 57, 210 S.E.2d 93, 95 (1974), *cert. denied*, 286 N.C. 416, 211 S.E.2d 796 (1975) (citation omitted). Officer Mullhall was in a lawful position to make a plain view observation of the briefcase lying on the floorboard with the butt of a gun exposed. Additionally, the Supreme Court has upheld the validity of protective searches notwithstanding the plain view doctrine by stating

the search of the passenger compartment of an automobile, limited to those areas in which a weapon may be placed or *hidden*, is permissible if the police officer possesses a reasonable belief based on "specific and articulable facts which, taken together with the rational inferences from those facts, reasonably warrant" the officer in believing that the suspect is dangerous and the suspect may gain immediate control of the weapons.

STATE v. HUDSON

[103 N.C. App. 708 (1991)]

. . . If a suspect is "dangerous," he is no less dangerous simply because he is not arrested.

*Michigan v. Long*, 463 U.S. at 1049-50, 103 S.Ct. at 3481, 77 L.Ed.2d at 1220 (emphasis added; footnote and citations omitted). *See California v. Acevedo*, --- U.S. ---, 59 U.S.L.W. 4559, 4564, 111 S.Ct. 1982, 1991, 114 L.Ed.2d 619, 634 (1991). ("The police may search an automobile and the containers within it where they have probable cause to believe contraband or evidence is contained.") Upon seeing the gun protruding from the briefcase, Officer Mullhall was justified in conducting a more thorough search of the briefcase for his own protection, as the trial court had sufficient competent evidence from which to conclude that he possessed an articulable and reasonable belief that the suspect was armed and could gain immediate control of the weapons. *Pennsylvania v. Mimms*, 434 U.S. at 111-12, 98 S.Ct. at 333-34, 54 L.Ed.2d at 337-38. Upon opening the briefcase, he saw a second gun, the money, and the two boxes of mannitol. "If, while conducting a legitimate *Terry* search of the interior of the automobile, the officer should, as here, discover contraband other than weapons, he clearly cannot be required to ignore the contraband, and the Fourth Amendment does not require its suppression in such circumstances." *Michigan v. Long*, 463 U.S. at 1050, 103 S.Ct. at 3481, 77 L.Ed.2d at 1220 (citations omitted). The trial court's conclusion of law regarding the lawful seizure of the briefcase lying on the floorboard is amply supported by the findings of fact. Accordingly, defendant's argument is without merit.

[6] Defendant also contends that Officer Mullhall lacked sufficient probable cause to conduct a warrantless search of the other "purse/briefcase" that the passenger held onto when she got out of the car. When Officer Mullhall asked the passenger if this briefcase was hers, she responded, "Yes." Defendant has failed to show any ownership or possessory interest in this "purse/briefcase." "It is a general rule of law in this jurisdiction that one may not object to a search or seizure of the premises or property of another. . . . Absent ownership or possessory interest in the premises or property, a person has no standing to contest the validity of a search." *State v. Greenwood*, 301 N.C. 705, 707-08, 273 S.E.2d 438, 440 (1981) (citations omitted). Defendant has failed to meet his burden of proving that he had a legitimate expectation of privacy in the passenger's property. *Rawlings v. Kentucky*, 448 U.S. 98, 100 S.Ct. 2556, 65 L.Ed.2d 633 (1980). Accordingly, we hold that defendant

failed to show that the seizure and search of the "purse/briefcase" infringed upon his own personal rights under the Fourth Amendment and that defendant's motion to suppress its contents was properly denied by the trial court.

Accordingly, we conclude that there is ample competent evidence to support the trial court's findings of fact and that the findings of fact support the trial court's conclusions of law.

No error.

Chief Judge HEDRICK and Judge WELLS concur.