STATE OF NORTH CAROLINA v. BORN MURRAY

No. COA07-1555

(Filed 16 September 2008)

**Search and Seizure— traffic stop—investigatory—no particularized suspicion**

Evidence of cocaine found after an investigatory traffic stop should have been suppressed where the stop was based only on the officer's unparticularized suspicion or hunch and did not meet the minimal level of objective justification necessary for an investigatory traffic stop.

Appeal by defendant from judgment entered 13 September 2007 by Judge Susan C. Taylor in Superior Court, Cabarrus County. Heard in the Court of Appeals 18 August 2008.

*Attorney General Roy Cooper, by Assistant Attorney General John P. Scherer II, for the State.*

*Roderick M. Wright, Jr., for defendant-appellant.*

WYNN, Judge.

As held by our Supreme Court, "[a]n investigatory stop must be justified by a reasonable suspicion, based on objective facts, that the individual is involved in criminal activity."[1] In the instant case, the law enforcement officer who initiated the investigatory stop of Defendant Born Murray testified during *voir dire* examination that he had no reason to believe that Defendant was engaged in any unlawful activity at the time of the stop. Accordingly, we must conclude that the trial court erred in denying Defendant's motion to suppress evidence gathered pursuant to the unlawful stop.

At approximately 3:41 a.m. on the morning of 26 October 2006, Officer Todd Arthur of the Concord Police Department was performing a property check in the area of the Motorsports Industrial Park. This activity entailed patrolling the main road and checking the buildings and parking lots in the area as part of a "problem oriented policing project" begun in January 2006 following reports of break-ins of vehicles and businesses in the Park. As Officer Arthur came around a

---

1. *State v. Campbell*, 359 N.C. 644, 664, 617 S.E.2d 1, 14 (2005) (internal quotations omitted).

curve on the main road, he "passed a vehicle coming out of the area," which he thought was "kind of weird," as he "hadn't seen the vehicle in any of [his] earlier property checks around the businesses." He decided to turn around and pull behind the vehicle to "run its license plate and just see if maybe it was a local vehicle."

Officer Arthur conceded that the vehicle was not violating any traffic laws, was not trespassing, speeding, or making any erratic movements, and was on a public street. Moreover, his check of the license plate showed that the vehicle was not stolen and was in fact a rental vehicle from nearby Charlotte. Nevertheless, at that point, Officer Arthur "decided to go ahead and do an investigatory traffic stop on [the vehicle] to find out what they were doing in that location."

When Officer Arthur approached the vehicle, he "immediately detected a strong odor of burnt marijuana coming from inside." He then informed the driver why he had stopped the vehicle and asked for his driver's license and the rental agreement. The driver responded that he and Defendant, the passenger, were actually lost and were trying to get back to Highway 49. Officer Arthur gave them directions to get back to the highway before returning to his own vehicle to check the license and rental agreement. Due to the smell of marijuana, he then called for additional officers to come to the scene. He also learned that the driver's license had been suspended for his failure to appear on several different charges in Mecklenburg County courts. Additionally, the vehicle was rented to a female, with her name listed as the only authorized driver on the agreement, but no female was in the vehicle. When Officer Arthur contacted the rental company to advise them that he had stopped one of their vehicles without the renter herself in the vehicle, they requested that Officer Arthur have the vehicle towed.

After two more officers, including a canine officer, arrived on the scene, Officer Arthur approached the vehicle again and asked the driver if he was aware that his license had been suspended. He informed the driver that the rental company wanted to have the vehicle towed and further advised him that he had smelled marijuana coming from the vehicle. Officer Arthur asked the driver to step outside the vehicle; after getting consent to search the driver, he found nothing on him, although the driver admitted to smoking a marijuana cigarette prior to being stopped by Officer Arthur. At the same time, Officer Michael Fitzgerald went to the passenger side of the vehicle and asked Defendant to step out; when he consented to a search of

his person, Officer Fitzgerald found "a small off-white chunk of white material which [he] believed to be crack cocaine or cocaine base" in Defendant's right rear pocket. Officer Fitzgerald testified that Defendant then "made the spontaneous statement that, 'S—, I forgot I had that.'" A field test kit showed that the substance found in Defendant's pocket was cocaine base, and Defendant was arrested for felony possession of cocaine.

At trial, Defendant moved to suppress the evidence gathered by the police, namely, the cocaine found in his pocket, on the grounds that Officer Arthur did not have a reasonable suspicion sufficient to stop the vehicle, and the subsequent search was therefore unlawful. However, the trial court found that Officer Arthur did have the requisite "minimal level of objective justification" to form a reasonable suspicion of unlawful activity, based on the totality of the circumstances, including the prior break-ins of automobiles and businesses in the Motorsports Industrial Park, the late hour of the stop, the fact that the businesses were closed at that time and there were no residences located there, and Officer Arthur's observation that the vehicle had not previously been parked at one of the businesses.

Following the denial of Defendant's motion to suppress, he pled guilty to felony possession of cocaine and received a suspended sentence of six to eight months in prison, as well as supervised probation for thirty months. Defendant now appeals the denial of his motion to suppress, specifically arguing that the police lacked a reasonable suspicion sufficient to stop the vehicle in question, such that any subsequent search of the driver or Defendant was unlawful. We agree.

We review a trial court's denial of a motion to suppress for "whether the trial court's findings of fact are supported by the evidence and whether the findings of fact support the conclusions of law." *State v. Cockerham*, 155 N.C. App. 729, 736, 574 S.E.2d 694, 699 (citing *State v. Wynne*, 329 N.C. 507, 522, 406 S.E.2d 812, 820 (1991)), *disc. review denied*, 357 N.C. 166, 580 S.E.2d 702 (2003). The trial court's findings of fact "are conclusive on appeal if supported by competent evidence, even if the evidence is conflicting." *State v. Buchanan*, 353 N.C. 332, 336, 543 S.E.2d 823, 826 (2001) (citations omitted). The conclusions of law, however, are reviewed *de novo* by this Court. *State v. Brooks*, 337 N.C. 132, 141, 446 S.E.2d 579, 585 (1994).

Our federal and state constitutions protect individuals "against unreasonable searches and seizures." U.S. Const. amend. IV; N.C.

Const. art. I, § 20. A traffic stop is a seizure "even though the purpose of the stop is limited and the resulting detention quite brief." *Delaware v. Prouse*, 440 U.S. 648, 653, 59 L. Ed. 2d 660, 667 (1979). Nevertheless, a traffic stop is generally constitutional if the police officer has a "reasonable, articulable suspicion that criminal activity is afoot." *Illinois v. Wardlow*, 528 U.S. 119, 123, 145 L. Ed. 2d 570, 576 (2000) (citing *Terry v. Ohio*, 392 U.S. 1, 30, 20 L. Ed. 2d 889, 911 (1968); *see also State v. Barnard*, 362 N.C. 244, 246, 658 S.E.2d 643, 645 (2008); *State v. Wilson*, 155 N.C. App. 89, 94-95, 574 S.E.2d 93, 97-98 (2002) (outlining the different standard for a stop based on an observed traffic violation, governed by probable cause, and that for a stop based on the "suspicion that a traffic violation is being committed, but which can only be verified by stopping the vehicle," which must be based on a reasonable suspicion), *disc. review denied*, 356 N.C. 693, 579 S.E.2d 98, *cert. denied*, 540 U.S. 843, 157 L. Ed. 2d 78 (2003).

As held by our state Supreme Court:

Only unreasonable investigatory stops are unconstitutional. An investigatory stop must be justified by a reasonable suspicion, based on objective facts, that the individual is involved in criminal activity. A court must consider the totality of the circumstances—the whole picture—in determining whether a reasonable suspicion to make an investigatory stop exists. The stop must be based on specific and articulable facts, as well as the rational inferences from those facts, as viewed through the eyes of a reasonable, cautious officer, guided by his experience and training. The only requirement is a minimal level of objective justification, something more than an unparticularized suspicion or hunch.

*State v. Campbell*, 359 N.C. 644, 664, 617 S.E.2d 1, 14 (2005) (internal citations and quotations omitted). Thus, "[r]easonable suspicion is a 'less demanding standard than probable cause and requires a showing considerably less than preponderance of the evidence.' " *Barnard*, 362 N.C. at 247, 658 S.E.2d at 645 (quoting *Wardlow*, 528 U.S. at 123, 145 L. Ed. 2d at 576) (citation omitted). Nevertheless, the requisite degree of suspicion must be high enough "to assure that an individual's reasonable expectation of privacy is not subject to arbitrary invasions solely at the unfettered discretion of officers in the field." *See Brown v. Texas*, 443 U.S. 47, 51, 61 L. Ed. 2d 357, 362 (1979).

Here, Defendant does not challenge any of the trial court's findings of fact, but only the conclusion of law that the totality of the circumstances showed that Officer Arthur had a reasonable suspicion of criminal activity sufficient to justify his investigatory stop of the vehicle in which Defendant was a passenger. As such, we are bound by the trial court's findings of fact. *State v. Roberson*, 163 N.C. App. 129, 132, 592 S.E.2d 733, 735-36, *disc. review denied*, 358 N.C. 240, 594 S.E.2d 199 (2004). However, we agree with Defendant that the trial court's findings do not support its conclusion of law that Officer Arthur had a reasonable suspicion sufficient to justify stopping the vehicle in question.

As Officer Arthur testified at trial, the vehicle in which Defendant was a passenger was not violating any traffic laws at the time that Officer Arthur observed it on Motorsports Drive. Although his patrol of the area was part of increased policing due to past break-ins, Officer Arthur had seen no indication that night of any damage to vehicles or businesses in the Park; he stated on cross examination that he "hadn't checked all the businesses yet" and stopped the vehicle because he "wanted to make sure there wasn't anything illegal that had tooken [sic] place prior to [his] observing the vehicle."

When asked if the vehicle was acting any differently than other cars Officer Arthur had stopped in the past, which he had determined were not engaged in any unlawful activity, Officer Arthur answered that the vehicle "was just leaving the area" and was not doing anything different. More significantly, the following exchange took place during Officer Arthur's cross examination:

[Defense counsel] But you had no reason to believe that this vehicle or any of the occupants in this vehicle had been engaged in any unlawful activity.

[Officer Arthur]   No, sir. *Not at that time.*

[Defense counsel] You were basically—You were stopping them to find out if that was a possibility?

[Officer Arthur]   Yes, sir.

(Emphasis added). Officer Arthur confirmed that he had not seen the vehicle leaving one of the business's parking lots, that the vehicle was not trespassing but was on a public street, obeying all traffic laws, and that his check of the license plate showed no irregularities.

Thus, by his own admission, at the time Officer Arthur stopped the vehicle, he had "no reason to believe" that its occupants were engaged in any unlawful activity. Likewise, the trial court noted in its findings of fact that Officer Arthur "had no suspicion that illegal activity had occurred" at the time of the stop. Officer Arthur never articulated any specific facts about the vehicle itself to justify the stop; instead, all of the facts relied on by the trial court in its conclusions of law were general to the area, namely, the "break-ins of property at Motorsports Industrial Park . . . the businesses were closed at this hour . . . no residences were located there . . . this was in the early hours of the morning," and would justify the stop of *any* vehicle there. *Cf. State v. Watkins*, 337 N.C. 437, 442-43, 446 S.E.2d 67, 70-71 (1994) (finding reasonable suspicion based on the late-night hour of the stop, a car moving without lights in the parking lot of a closed business, the generally rural nature of the area, and a tip that a "suspicious vehicle" had been seen in that location); *State v. Fox*, 58 N.C. App. 692, 695, 294 S.E.2d 410, 412-13 (1982) (reasonable suspicion based on the very early morning hour, the location on a dead-end street with locked businesses in an area with a high incidence of property crime, the appearance of the driver contrasted with the nature of the vehicle, the driver's apparent attempt to avoid the officer's gaze, and the officer's belief that one of the businesses had been broken into that same night), *aff'd per curiam*, 307 N.C. 460, 298 S.E.2d 388 (1983); *State v. Tillett*, 50 N.C. App. 520, 521-24, 274 S.E.2d 361, 362-64 (reasonable suspicion based on late hour and bad weather at time of stop, location on one-lane dirt road in "heavily wooded, seasonably unoccupied" area, reports of "firelighting" deer, and the fact that officer did not observe an inspection sticker on the vehicle), *appeal dismissed*, 302 N.C. 633, 280 S.E.2d 448 (1981). Indeed, the trial court found that Officer Arthur "had found no broken glass, lights on or other suspicious circumstances at any" of the businesses he had checked, to suggest that there had been a break-in that night.

Accordingly, we hold that the trial court's conclusion of law that Officer Arthur's stop of the vehicle in question "was justified by a reasonable suspicion based on objective facts" was erroneous, given that it was based in part on a finding that Officer Arthur "had *no suspicion* that illegal activity had occurred" when he stopped the vehicle. (Emphasis added). Officer Arthur's stop of the vehicle was based only on his "unparticularized suspicion or hunch" and does not meet the minimal level of objective justification necessary for an investigatory traffic stop. *See Campbell*, 359 N.C. at 664, 617 S.E.2d at 14 (internal citations and quotations omitted). To hold otherwise

would make any individual in the Motorsports Industrial Park "subject to arbitrary invasions solely at the unfettered discretion of officers in the field." *Brown*, 443 U.S. at 51, 61 L. Ed. 2d at 362. Therefore, we reverse the denial of Defendant's motion to suppress and remand this case to the trial court for further proceedings.

Reversed and remanded.

Chief Judge MARTIN and Judge HUNTER concur.