STATE OF NORTH CAROLINA v. RAYMOND LORENZO BURKE, JR.

No. COA10-1084

(Filed 21 June 2011)

**Search and Seizure— traffic stop—lack of reasonable suspicion**

The trial court erred in a drugs and carrying a concealed weapon case by denying defendant's motion to suppress evidence based on lack of reasonable suspicion to conduct a valid stop of defendant's vehicle where the stop was merely based on the possibility that a thirty-day tag was fictitious.

Chief Judge, MARTIN, dissenting.

Appeal by Defendant from judgment entered 24 August 2009 by Judge Theodore S. Royster in Superior Court, Mecklenburg County. Heard in the Court of Appeals 7 March 2011.

*Attorney General Roy Cooper, by Assistant Attorney General Martin T. McCracken, for the State.*

*The Wright Law Firm of Charlotte, PLLC, by Roderick M. Wright, Jr., for Defendant.*

McGEE, Judge.

Charlotte-Mecklenburg Police Officer J.A. Allman[1] (Officer Allman) was on patrol on 16 February 2008 when he observed Raymond Lorenzo Burke, Jr. (Defendant) driving an Infiniti automobile (the vehicle) with a thirty-day license tag. Based on Officer Allman's previous observation of current 30-day tag numbers being issued at the time, he believed there was a possibility that the thirty-day tag on the vehicle was fictitious, and he stopped Defendant to investigate. After stopping Defendant, Officer Allman asked for Defendant's registration and informed Defendant of his reason for the stop. When Defendant opened his glove box to retrieve his registration, Officer Allman viewed a handgun in the glove box. Officer Allman asked Defendant to step out of the vehicle. He then arrested Defendant for carrying a concealed weapon. When Officer Allman asked Defendant if Defendant had anything else Officer Allman should know about, Defendant replied that he also had ecstasy and cocaine. Officer Allman searched Defendant and confiscated six ecstasy pills and 1.9 grams of cocaine from Defendant's left front pocket. Officer Allman then removed the handgun, which was loaded, from the glove box.

Defendant was indicted on 7 July 2008 for possession of a Schedule I controlled substance (ecstasy), possession of cocaine, and carrying a concealed weapon. Defendant filed a motion to suppress on 12 November 2008, arguing that Officer Allman's stop of Defendant's vehicle was illegal because Officer Allman lacked reasonable suspicion of criminal activity to justify the stop. Defendant moved to suppress all evidence obtained by Officer Allman as a result of the stop. Defendant further argued that he was questioned in violation of his *Miranda* rights, and that the search of his person was unlawful. Defendant's motion was heard on 9 January 2009. Officer Allman was the only witness to testify at the suppression hearing.

At the suppression hearing, Officer Allman specifically testified that: "The tag on [Defendant's] car appeared to be old and worn. The [number on the] 30-day tag appeared to be much lower than what was given out at the time. I believed the tag to be fictitious." The number on Defendant's thirty-day tag was 14949790. Officer Allman testified that he didn't "recall" what number range he "would have found to be an acceptable range." Officer Allman testified that it was dark, but

---

1. The arresting officer in this appeal is identified as "Joshua Amond" in the hearing transcript of the motion to suppress and as "J.A. Allman" in the indictments and order denying the motion to suppress. In this opinion, we will refer to him as Officer J.A. Allman.

that he was in a well-lit area and the tag was readable. When questioned about the condition of the tag, Officer Allman testified that though there was ample space available, there was no documentation on the arresting affidavit regarding the tag being old or worn. Officer Allman also did not indicate to Defendant that the tag was dirty or worn. It was not until later, when Officer Allman completed a more detailed report, that he indicated the tag was worn and dirty. Officer Allman testified that he could not recall the level of dirt on the tag. He testified that the only reason given on the arresting affidavit was the "low number" of the tag and that both the number and the condition of the tag contributed to his suspicion, but that "the number was the most important." Officer Allman was asked if the tag "was a proper size, properly placed in a proper location, all of those things?" He answered: "That's correct." Officer Allman testified that the tag was not faded, and that he could read the numbers. The following colloquy occurred at the suppression hearing as Defendant's counsel questioned Officer Allman:

> Q  If the tag had the number that it did, the 14949790 but didn't have any dirt or wear, would you have still stopped Mr. Burke's vehicle?
>
> A  Yes.
>
> Q  If the tag had the amount of dirt and wear that you observed and had a number that was consistent with what you are used to seeing at that time, would you have stopped the vehicle just because of the dirt?
>
> A  No.
>
> Q  So but for the number, you wouldn't have stopped the vehicle?
>
> A  Based on the dirt and wear and the number.
>
> Q  If the number had been what you were used to seeing at that time, you wouldn't have stopped it.
>
> A  That's correct.
>
> Q  But you would have stopped it with no dirt or wear at all, if it was clean as a whistle based upon the number that you saw?
>
> A  That's correct.

Officer Allman testified that he observed nothing else suspicious or illegal regarding Defendant's vehicle or the operation of the vehicle at

the time. He also testified there was no specific number range that he would have found acceptable and that there was nothing else out of the ordinary regarding the tag. Despite Officer Allman's testimony regarding the absence of any other suspicious or illegal activity, when Defendant's attorney asked: "But you thought there was a possibility that Mr. Burke's tag was fictitious?[,]" Officer Allman said, "I wondered about the possibility of the tag being fictitious. That's correct." After reviewing Defendant's documentation of the tag, Officer Allman testified that he found nothing fictitious about the tag.

In an order entered 18 August 2009, the trial court denied Defendant's motion to suppress. After the denial of his motion to suppress, Defendant pled guilty to felony possession of a Schedule 1 controlled substance, felony possession of cocaine, and misdemeanor carrying a concealed weapon. Defendant's charges were consolidated for judgment and Defendant was sentenced on 24 August 2009 to four to five months in prison, which was suspended. Defendant received eighteen months of supervised probation. Defendant expressly reserved the right to appeal the denial of his motion to suppress. Pursuant to N.C. Gen. Stat. § 15A-979(b), Defendant appeals.

In Defendant's sole argument, he contends that the trial court erred in denying his motion to suppress because Officer Allman lacked reasonable suspicion to conduct a valid stop of Defendant's vehicle. We agree.

The scope of appellate review of a denial of a motion to suppress "is strictly limited to determining whether the trial judge's underlying findings of fact are supported by competent evidence, in which event they are conclusively binding on appeal, and whether those factual findings in turn support the judge's ultimate conclusions of law." *State v. Cooke*, 306 N.C. 132, 134, 291 S.E.2d 618, 619 (1982).

This Court has previously stated that "a police officer may conduct a brief investigative stop of a vehicle where justified by specific, articulable facts which give rise to a reasonable suspicion of illegal conduct." *State v. Hudson*, 103 N.C. App. 708, 715, 407 S.E.2d 583, 586 (1991). Furthermore, this Court has stated that reasonable suspicion must "be based on specific and articulable facts, as well as the rational inferences from those facts, as viewed through the eyes of a reasonable, cautious officer, guided by his experience and training." *State v. Watkins*, 337 N.C. 437, 441, 446 S.E.2d 67, 70 (1994). This is not a subjective standard based on the discretion of the officer; it is one that requires "objective justification to validate the detention or seizure." *INS v. Delgado*, 466 U.S. 210, 217, 80 L. Ed. 2d 247, 255 (1984).

We "must consider 'the totality of the circumstances—the whole picture' in determining whether a reasonable suspicion to make an investigatory stop exists." *Watkins*, 337 N.C. at 441, 446 S.E.2d at 70 (1994) (citation omitted). This objective standard requires that the officer "must be able to articulate something more than an 'inchoate and unparticularized suspicion or "hunch." ' " *U.S. v. Sokolow*, 490 U.S. 1, 7, 104 L. Ed. 2d 1, 10 (1989) (citation omitted).

Officer Allman testified that his basis for the traffic stop was that the numbers on Defendant's thirty-day tag looked low, based on his recent observations of thirty-day tags. The purportedly "low" number led Officer Allman to "wonder[] about the possibility of the tag being fictitious."

N.C. Gen. Stat. § 20-79.1(e) sets out the information that must appear on all temporary tags, and states that the required information must appear "clearly and indelibly on the face of the temporary registration plate or marker." N.C. Gen. Stat. § 20-79.1(e) (2009). N.C.G.S. § 20-79.1 does not prohibit a temporary tag from being either dirty or worn, so long as the relevant information is legible.

In prior cases before our Court where the condition of a thirty-day tag has been the basis for a traffic stop, the issue has been the legibility of the tag. Our Court has held thirty-day tags that were unreadable, or on which parts of the tag were concealed, obstructed, or illegible, justified the officers in those cases stopping the vehicles involved. *See, e.g., State v. Branch*, 194 N.C. App. 173, 669 S.E.2d 18 (2008) (concealed expiration date on the thirty-day tag justified the stop); *Hudson*, 103 N.C. App. 708, 407 S.E.2d 583 (1991) (where the thirty-day tag was faded out to the point of being illegible, stop was reasonable).

In the case before us, Officer Allman did testify that the thirty-day tag was dirty and worn. However, Officer Allman testified he was able to read the tag without difficulty; the tag was not faded; the information was clearly visible to him; and the information was accurate and proper. Officer Allman's stated basis for the traffic stop was his erroneous belief that the numbers on the tag were too "low." Our standard of review requires "a minimal level of objective justification" in order for an investigatory stop to be legal. *State v. Watkins*, 337 N.C. 437, 442, 446 S.E.2d 67, 70 (1994).

In the case before us, it is undisputed that Officer Allman did not observe anything illegal about Defendant's thirty-day tag. Temporary tags are made of paper, and may quickly become dirty and worn due

to common conditions of the weather and the roads. It is not unreasonable to expect law enforcement officers to be familiar with the laws they are charged to enforce. In the present case, we hold that a "reasonable officer" would not have formed a reasonable suspicion that criminal activity was afoot, based upon the observation of a thirty-day tag on which all relevant information was clearly legible, merely because he "wondered about the possibility" that the tag might be fictitious. In the present case, Officer Allman was unable "to articulate something more than an 'inchoate and unparticularized suspicion or "hunch." ' " *Sokolow*, 490 U.S. at 7, 104 L. Ed. 2d at 10 (citation omitted). We must, therefore, reverse the trial court's denial of Defendant's motion to suppress and vacate the judgment in this matter.

Reversed and judgment vacated.

Judge McCULLOUGH concurs.

Chief Judge MARTIN dissents with a separate opinion.

MARTIN, Chief Judge, dissenting.

I respectfully dissent. As the majority recognizes, "[i]t is well-settled law that a police officer may make a brief investigative stop of a vehicle if justified by specific, articulable facts giving rise to a reasonable suspicion of illegal activity." *State v. Holmes*, 109 N.C. App. 615, 619, 428 S.E.2d 277, 279 (internal quotation marks omitted), *disc. review denied*, 334 N.C. 166, 432 S.E.2d 367 (1993). While I agree that, in order to establish a constitutional basis for a warrantless investigatory stop, the law requires "something more than an 'unparticularized suspicion or hunch,' " *State v. Watkins*, 337 N.C. 437, 442, 446 S.E.2d 67, 70 (1994) (quoting *United States v. Sokolow*, 490 U.S. 1, 7, 104 L. Ed. 2d 1, 10 (1989)), *appeal after remand*, 120 N.C. App. 804, 463 S.E.2d 802 (1995), it is also true that "[t]he *only* requirement is a *minimal level* of objective justification . . . ." *Id.* (emphasis added). This is so because "[r]easonable suspicion is a 'less demanding standard than probable cause and requires a showing *considerably less than* preponderance of the evidence.' " *State v. Barnard*, 362 N.C. 244, 247, 658 S.E.2d 643, 645 (emphasis added) (quoting *Illinois v. Wardlow*, 528 U.S. 119, 123, 145 L. Ed. 2d 570, 576 (2000)), *cert. denied*, —— U.S. ——, 172 L. Ed. 2d 198 (2008). Thus, while "the requisite degree of suspicion [for an investigatory stop] must be high enough 'to assure that an individual's reasonable expectation of privacy is not subject to arbitrary

invasions solely at the unfettered discretion of officers in the field,' " *State v. Murray*, 192 N.C. App. 684, 687, 666 S.E.2d 205, 208 (2008) (quoting *Brown v. Texas*, 443 U.S. 47, 51, 61 L. Ed. 2d 357, 362 (1979)), and an investigatory stop of a vehicle "must be based on specific and articulable facts, as well as the rational inferences from those facts, as viewed through the eyes of a reasonable, cautious officer, guided by his experience and training," the prevailing law requires that such facts and inferences need only establish a "minimal level of objective justification" for an investigatory stop to be constitutional. *See Watkins*, 337 N.C. at 441–42, 446 S.E.2d at 70. With these guiding principles in mind, I believe the trial court's unchallenged findings of fact are sufficient to establish that it was more than an "unparticularized suspicion or hunch" that caused Officer Allman to make an investigatory stop of defendant's vehicle. *See id.* at 442, 446 S.E.2d at 70 (internal quotation marks omitted).

As the majority recognizes, Officer Allman did not have any difficulty reading the information on the thirty-day tag affixed to defendant's vehicle and testified that the temporary tag was dirty and worn. However, the officer also testified that visible dirt and wear were not the primary reasons that he stopped defendant's vehicle. Rather, it was Officer Allman's undisputed testimony that, because the number on defendant's temporary tag seemed to be "much lower" than those numbers he had observed on other temporary tags during the course of his regular daily patrols, the officer "believed the tag to be fictitious." Therefore, in light of the "less demanding standard" that need be met to establish a constitutional basis for a warrantless investigative stop, *see Barnard*, 362 N.C. at 247, 658 S.E.2d at 645 (internal quotation marks omitted), I am persuaded that Officer Allman's specific concern—that the numbering on the temporary tag affixed to defendant's vehicle was atypical and inconsistent with other temporary tags he observed during the course of his daily patrols—when "viewed through the eyes of a reasonable, cautious officer," *see* Watkins, 337 N.C. at 441, 446 S.E.2d at 70, was sufficient to establish "a reasonable or founded suspicion" to justify "a limited investigative seizure" of defendant's vehicle that would allow the officer to verify that the tag affixed to defendant's automobile was valid. *See Holmes*, 109 N.C. App. at 619, 428 S.E.2d at 279 (emphasis added) (internal quotation marks omitted). For these reasons, I would conclude that the trial court did not err by denying defendant's motion to suppress.