An unpublished opinion of the North Carolina Court of Appeals does not constitute controlling legal authority. Citation is disfavored, but may be permitted in accordance with the provisions of Rule 30(e)(3) of the North Carolina Rules of Appellate Procedure.

IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA25-220

Filed 18 March 2026

Nash County, No. 22CR051483-630

STATE OF NORTH CAROLINA

v.

USAMAH JIHAD, Defendant.

Appeal by defendant from judgment entered 26 October 2023 by Judge Timothy W. Wilson in Nash County Superior Court. Heard in the Court of Appeals 26 August 2025.

> *Attorney General Jeff Jackson, by Assistant Attorney General Joseph R. Mouer, for the State-appellee.*

> *Appellate Defender Glenn Gerding, by Assistant Appellate Defender David S. Hallen, for defendant-appellant.*

GORE, Judge.

Defendant Usamah Jihad appeals his conviction for robbery with a dangerous weapon. Defendant specifically argues the trial court erred by denying his motion to suppress. Upon review of the record and the briefs, we discern no error.

**I.**

On 11 May 2022, Samuel Parham was robbed at gun point after pulling into his driveway. Two men approached his vehicle from both sides just after he parked. Both men were wearing ski masks; the man on the driver's side pointed a gun at Parham's head and threatened to kill him if he did not give them money. Parham handed his wallet to the man with the gun while the man on the passenger's side of the car reached in and took his phone and charger. The men fled after robbing Parham and drove away in a two-toned Lexus.

Prior to the robbery, a series of shootings took place on a nearby street. Trayvon Finch was considered a person of interest in the second shooting because police overheard Finch say he would get revenge after his brother was injured during the first shooting. Police were aware Finch drove a gold Infiniti with black wheels due to investigating the first shooting where Finch lived. The suspect of the first shooting became the victim in the second shooting. While at the scene of the second shooting, Sergeant Robinson noticed the gold Infiniti drive by the house twice and decided to follow the vehicle, because his training and experience taught him that perpetrators return to the crime scene to observe officers investigating the scene.

Sergeant Robinson initiated a stop after following the vehicle and noticing the temporary registration tag was crumpled and difficult to read from his vantage point. Defendant was the passenger in the vehicle driven by Finch. Sergeant Robinson detained defendant and Finch, and searched the vehicle after finding marijuana ash on Finch's clothing. Upon searching the vehicle, Robinson found Parham's wallet, a

bag of marijuana, .45-caliber ammunition, and dark colored masks. Sergeant Robinson also searched Finch and defendant and found handguns and money in their pockets and pant legs. Officers later discovered the two-toned Lexus at defendant's house.

Defendant was charged with carrying a concealed weapon, possession of marijuana, possession of stolen goods, and robbery with a dangerous weapon. Prior to trial, the State dismissed all of defendant's charges except robbery with a dangerous weapon. Defendant filed a motion to suppress the evidence based upon Sergeant Robinson's stop and search of the gold Infiniti. The trial court denied defendant's motion to suppress. The jury returned a guilty verdict, and defendant was convicted of robbery with a dangerous weapon. Defendant was sentenced to 64 to 89 months' imprisonment. Defendant timely appealed the judgment.

**II.**

Defendant appeals of right pursuant to N.C.G.S. §§ 7A-27(b) and 15A-1444(a). Defendant argues the trial court erred by denying his motion to suppress. We review the denial of a motion to suppress to "determine whether competent evidence supports the trial court's findings of fact and whether the findings of fact support the conclusions of law." *State v. Williams*, 366 N.C. 110, 114 (2012). We review conclusions of law de novo. *Id.* "The trial court's findings of fact on a motion to suppress are conclusive on appeal if supported by competent evidence, even if the evidence is conflicting." *Id.*

In the present case, defendant challenges finding five of the trial court's order denying his motion to suppress the evidence. Finding five states, "[d]ue to the crumpled state of the tag and the way it was affixed to the rear of the Infiniti, [Officer] Robinson could not read the numbers and lettering on the temporary license plate from his position behind the gold Infiniti." Defendant argues the exhibits demonstrate the license plate was legible and clearly visible. Whereas, the State argues the following evidence supports the trial court's finding: Sergeant Robinson's testimony that the temporary license plate was "disheveled, crumpled, difficult to read" and that he could not read it while driving behind it; a photo of Sergeant Robinson's vantage point of the tag while on the roadway; and the body camera footage of the stop.

Notably, some of the exhibits of the temporary registration tag appear legible while some of the images make the tag appear illegible. Additional body camera footage showed angles that either made the tag appear legible or illegible. Despite the conflicting evidence, there is competent evidence to support the trial court's finding five that Sergeant Robinson could not read the temporary registration tag from his position behind the vehicle.

Defendant also challenges the trial court's conclusion twenty-seven in the order. Conclusion twenty-seven says, "The State proved by a preponderance of the evidence that the May 11 stop of the gold Infiniti was supported by reasonable,

articulable suspicion." Defendant argues Sergeant Robinson lacked a reasonable suspicion he committed a traffic violation to justify the stop.

An officer may initiate a traffic stop for a traffic violation or suspicion of criminal activity. "A traffic stop is permitted if the officer has a reasonable, articulable suspicion that criminal activity is afoot." *State v. Styles*, 362 N.C. 412, 414 (2008) (cleaned up). "Reasonable suspicion is the necessary standard for traffic stops, regardless of whether the traffic violation was readily observed or merely suspected." *Id.* at 415 (cleaned up). "Reasonable suspicion is a less demanding standard than probable cause and requires a showing considerably less than preponderance of the evidence. *Id.* at 414.

We consider the totality of the circumstances when determining whether the officer had reasonable suspicion to conduct the traffic stop. *Id.* "Our Court has held thirty-day tags that were unreadable, or on which parts of the tag were concealed, obstructed, or illegible, justified the officers in those cases stopping the vehicles involved." *State v. Burke*, 212 N.C. App. 654, 658 (2011), *aff'd,* 365 N.C. 415 (2012).

In the present case, the trial court found that the registration tag was crumpled in a way that Sergeant Robinson could not read the tag. It further found that Sergeant Robinson considered this a violation of Chapter 20 of the North Carolina General Statutes. N.C.G.S. § 20-63(g) states, "Any operator of a motor vehicle who shall willfully mutilate, bend, twist, cover or cause to be covered or partially covered . . . any part or portion of a registration plate or the figures or letters

thereon, . . . shall be guilty of a Class 2 misdemeanor." N.C.G.S. § 20-63(g) (2021). These findings support the trial court's conclusion that the State proved by a preponderance of the evidence the May 11 stop of the gold Infiniti was supported by reasonable, articulable suspicion.

Defendant argues his case is similar to *Burke*, and distinguishable from *State v. Hudson*. We disagree. In *Burke*, the officer testified the registration tag was dirty and worn but he could read the tag and only stopped the vehicle because the number on the tag appeared "fictious" to him. 212 N.C. App. at 655–56. The *Burke* Court articulated that the law requires the information "appear clearly and indelibly on the face of the temporary registration plate or marker." *Id.* at 658. Because the officer "did not observe anything illegal about Defendant's thirty-day tag," it reversed and vacated the judgment. *Id.* at 658–59.

In *Hudson*, the police officer conducted a traffic stop because the temporary registration tag numbers and expiration date were "faded out" and "illegible." 103 N.C. App. 708, 715 (1991). We stated that this was sufficient competent evidence for the trial court to conclude the officer had reasonable suspicion to conduct a traffic stop for a traffic violation. *Id.*

In the present case, the officer testified he could not read the registration tag from his vantage point because it was crumpled. The officer's body camera video and some of the images supported the officer's testimony. Accordingly, there was reasonable suspicion of a traffic violation pursuant to Chapter 20 of the North

Carolina General Statutes, and this justified the officer's traffic stop. Because the findings of fact are supported by competent evidence and in turn support the conclusions of law, the trial court properly denied defendant's motion to suppress the evidence.

## III.

For the foregoing reasons, the trial court properly denied defendant's motion to suppress the evidence.

NO ERROR.

Chief Judge DILLON and Judge STROUD concur.

Report per Rule 30(e).