IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA23-9

Filed 16 January 2024

Mecklenburg County, Nos. 21 CRS 215042-43, 45

STATE OF NORTH CAROLINA

v.

ANTONIO DEMONT SPRINGS

Appeal by State from Order rendered 23 August 2022 by Judge Jesse B. Caldwell, IV in Mecklenburg County Superior Court. Heard in the Court of Appeals 23 August 2023.

*Attorney General Joshua H. Stein, by Assistant Attorney General Caden W. Hayes, for the State.*

*Appellate Defender Glenn Gerding, by Assistant Appellate Defender Michele A. Goldman, for Defendant.*

HAMPSON, Judge.

**Factual and Procedural Background**

The State appeals from an orally rendered Order granting a Motion to Suppress filed by Antonio Demont Springs (Defendant) and suppressing evidence seized during a traffic stop. The Record before us tends to reflect the following:

On 17 May 2021, an Officer with the Charlotte-Mecklenburg Police Department initiated a stop of Defendant's vehicle on suspicion of a fictitious tag. When the Officer pulled over Defendant and approached the car, he observed

Defendant "fumbling through to get some paperwork" with his hands "shaking," and noted Defendant appeared "very nervous." Defendant was the only person in the car. Defendant gave the Officer his identification card and the car's paperwork. The Officer determined the car was not stolen, but Defendant was driving on a revoked license. The Officer returned to Defendant's vehicle and asked him "about the odor of marijuana in the vehicle." Defendant denied smoking marijuana in the car, prompting the following exchange:

> Officer: You didn't have a blunt earlier or anything?
>
> Defendant: No. I just got the car from my homeboy. That's probably why.
>
> Officer: Is that why it smells like weed in here?
>
> Defendant: Yeah—
>
> Officer: —because he might have smoked a blunt or something earlier?
>
> Defendant: Yeah.

The Officer then asked Defendant to get out of the car. Defendant did so and took some belongings with him, including a cellphone, cigarettes, and a Crown Royal bag. The Officer took Defendant's items and put them in the driver's seat of the car to pat down Defendant for weapons. After the search and finding no weapons, the Officer returned Defendant's cellphone and cigarettes, but opened and searched the Crown Royal bag. In the bag, the Officer found a digital scale, a green leafy substance, two baggies of white powder, and "numerous baggies of colorful pills[.]"

On 24 May 2021, Defendant was subsequently indicted for Possession of Drug Paraphernalia, Trafficking in Drugs, and Possession with Intent to Sell or Deliver a Controlled Substance based on this evidence. On 17 August 2022, Defendant filed a Motion to Suppress the evidence from the Crown Royal bag, arguing the Officer lacked probable cause to search the car, and consequently, lacked probable cause to search the bag.

Specifically, at the hearing on Defendant's Motion to Suppress on 23 August 2022, Defendant contended that because hemp, which Defendant argued is indistinguishable from marijuana in odor and appearance, is legal in North Carolina, the odor of marijuana alone was no longer sufficient to establish probable cause for the ensuing searches. The State argued that binding precedent in this state holds that marijuana odor alone per se supports a finding of probable cause to support a search. Further, the State asserted even presuming odor alone was insufficient, the Officer had additional evidence supporting probable cause, including Defendant's "fidgety" behavior, the fact Defendant was driving with a fictitious tag and without a valid license, and Defendant's agreement marijuana may have been smoked in the car earlier, which the trial court characterized as "an acknowledgment, if not an admission" marijuana had been smoked in the car.

At the conclusion of the hearing, the trial court orally granted Defendant's Motion. In rendering its ruling, the trial court stated: "So I think that the standards

- 3 -

set forth in *Parker*[1] which is abbreviated odor plus is certainly the appropriate standard to use here." The trial court acknowledged "the odor of something that could be marijuana but might be CBD or hemp or a legal hemp-related product is certainly an issue or a consideration for law enforcement to make note of when evaluating or trying to reach probable cause." The trial court further acknowledged, "[a]nd in this circumstance arguably there were additional factors to consider" including the traffic violations and the acknowledgment "that weed, bud, the colloquial for marijuana, was smoked in the vehicle previously." The trial court, however, concluded: "I just think in the totality here and given the new world that we live in, that odor plus is the standard and we didn't get the plus here. There was no probable cause."

The State filed written Notice of Appeal on 29 August 2022. The Notice of Appeal, however, stated the appeal was from an order "grant[ing] the defendant's motion to dismiss[.]" Two days later, on 31 August 2022, the State filed a Certification, certifying that the appeal was not taken for the purpose of delay and that the evidence suppressed is essential to the case.

## **Appellate Jurisdiction**

The parties do not address appellate jurisdiction in their briefing to this Court. However, the State's Notice of Appeal, the later Certification of its interlocutory appeal, failure to include a Statement of Grounds for Appellate Review in its brief,

---

[1] *State v. Parker*, 277 N.C. App. 531, 860 S.E.2d 21, appeal dismissed, review denied, 860 S.E.2d 917 (2021).

failure to address our authority to review an orally-rendered order granting a Motion to Suppress, and overall failure to provide this Court with any jurisdictional basis to review this matter requires this Court examine the basis for our appellate jurisdiction. *See State v. Webber*, 190 N.C. App. 649, 650, 660 S.E.2d 621, 622 (2008) ("It is well-established that the issue of a court's jurisdiction over a matter may be raised at any time, even . . . by a court sua sponte.").

First, "when a [party] has not properly given notice of appeal, this Court is without jurisdiction to hear the appeal." *State v. McCoy*, 171 N.C. App. 636, 638, 615 S.E.2d 319, 320 (2005). Rule 4 of the North Carolina Rules of Appellate Procedure sets out the requirements for a notice of appeal in criminal cases. *See* N.C.R. App. P. 4 (2023). Relevant to this case, Rule 4(b) provides the requisite contents of a written notice of appeal:

> The notice of appeal required to be filed and served . . . shall specify the party or parties taking the appeal; *shall designate the judgment or order from which appeal is taken* and the court to which appeal is taken; and shall be signed by counsel of record for the party or parties taking the appeal, or by any such party not represented by counsel of record.

N.C.R. App. P 4(b) (emphasis added). "Our Supreme Court has said that a jurisdictional default, such as a failure to comply with Rule 4, 'precludes the appellate court from acting in any manner other than to dismiss the appeal.' " *State v. Hammonds*, 218 N.C. App. 158, 162, 720 S.E.2d 820, 823 (2012) (quoting *Dogwood*

*Dev. & Mgmt. Co. v. White Oak Transp. Co.*, 362 N.C. 191, 197, 657 S.E.2d 361, 365 (2008)).

Here, the State's Notice of Appeal indicates it is from an order granting "the defendant's motion to dismiss[.]" No such order appears in the Record. Rather, the State's arguments focus entirely on the grant of Defendant's Motion to Suppress. We acknowledge, however, " 'a mistake in designating the judgment . . . should not result in loss of the appeal as long as the intent to appeal from a specific judgment can be fairly' inferred from the notice and the appeal is not misled by the mistake[.]' " *Stephenson v. Bartlett*, 177 N.C. App. 239, 241, 628 S.E.2d 442, 443 (2006) (quoting *Von Ramm v. Von Ramm*, 99 N.C. App. 153, 156-57, 392 S.E.2d 422, 424 (1990)).

Our Court has observed that granting a motion to suppress—even of evidence which is essential to the State's case—is not synonymous with dismissal of the case. *See State v. Romano*, 268 N.C. App. 440, 447, 836 S.E.2d 760, 768 (2019) (affirming denial of a motion to dismiss at trial because "[e]ven though this Court and our Supreme Court agreed the trial court properly suppressed the evidence, that did not impede the State from proceeding to trial without the suppressed evidence since our appellate courts' decisions on the motion to suppress were made prior to trial."); *see also State v. Fowler*, 197 N.C. App. 1, 28-29, 676 S.E.2d 523, 545 (2009) ("A trial court's decision to grant a pretrial motion to suppress evidence 'does not mandate a pretrial dismissal of the underlying indictments' because '[t]he district attorney may elect to dismiss or proceed to trial without the suppressed evidence and attempt to

establish a prima facie case.' " (quoting *State v. Edwards*, 185 N.C. App. 701, 706, 649 S.E.2d 646, 650 (2007))).

Indeed, this highlights a second jurisdictional issue: the State's appeal is from an interlocutory order. *See Romano*, 268 N.C. App. at 445, 836 S.E.2d at 767 (an order granting a motion to suppress is an interlocutory—not final—decision). N.C. Gen. Stat. § 15A-979(c) provides the State a statutory right of appeal from an Order denying a motion to suppress prior to trial "upon certificate by the prosecutor to the judge who granted the motion that the appeal is not taken for the purpose of delay and that the evidence is essential to the case." N.C. Gen. Stat. § 15A-979(c) (2021). This Court has recognized Section 15A-979(c) "not only requires the State to raise its right to appeal according to the statutory mandate, but also places the burden on the State to demonstrate that it had done so." *State v. Dobson*, 51 N.C. App. 445, 447, 276 S.E.2d 480, 482 (1981). Similarly, Rule 28(b)(4) of the Rules of Appellate Procedure requires: "An appellant's brief shall contain . . . [a] statement of the grounds for appellate review. Such statement shall include citation of the statute or statutes permitting appellate review." N.C.R. App. P. 28(b)(4) (2023).

Crucially, "when an appeal is interlocutory, Rule 28(b)(4) is not a 'nonjurisdictional' rule. Rather, the *only way* an appellant may establish appellate jurisdiction in an interlocutory case . . . is by showing grounds for appellate review[.]" *Larsen v. Black Diamond French Truffles, Inc.*, 241 N.C. App. 74, 77-78, 772 S.E.2d 93, 96 (2015) (emphasis in original); *see also Coates v. Durham Cnty.*, 266 N.C. App.

271, 273-74, 831 S.E.2d 392, 394 (2019) ("Our Court has noted that in the context of interlocutory appeals, a violation of Rule 28(b)(4) is jurisdictional and requires dismissal."). This burden rests solely with the appellant. *Jeffreys v. Raleigh Oaks Joint Venture*, 115 N.C. App. 377, 379, 444 S.E.2d 252, 253 (1994).

Here, in violation of N.C.R. App. P. 28(b)(4), the State wholly failed to include any statement of grounds for appellate review. The State's brief offers no discussion of its defective Notice of Appeal or the timeliness of its subsequently filed Certification of the appeal. Nowhere in briefing does the State cite to N.C. Gen. Stat. § 15A-979 as statutory support for its interlocutory appeal. Moreover, the State's appeal is from an orally rendered Order granting a Motion to Dismiss without written findings of fact or conclusions of law. The State, however, offers no basis or rationale for our ability to review the orally rendered Order in this circumstance. The State's failure to comply with Rule 4 of the Rules of Appellate Procedure combined with its failure to comply with Rule 28(b)(4) of the Rules of Appellate Procedure constitutes a jurisdictional defect in the appeal depriving this Court of appellate jurisdiction requiring dismissal of the appeal.

Nevertheless, even assuming the shortcomings in the State's appeal and briefing do not rise to the level of jurisdictional defects, they still constitute substantial violations of the Rules of Appellate Procedure impairing and frustrating this Court's ability to review the merits. *See Dogwood*, 362 N.C. at 201, 657 S.E.2d at 367. Here, the defects in the appeal—at a minimum—raise substantial

jurisdictional questions, which the State, as the appellant, fails to address before this Court. This not only hampers our ability to judicially review this matter efficiently and effectively but also frustrates the appellate adversarial process by not squarely raising these issues to be briefed or addressed by Defendant. The State has also not taken steps to recognize or remedy these defects, such as petitioning for certiorari.

Mindful of the admonishment "it is not the role of this Court to create an appeal for an appellant or to supplement an appellant's brief with legal authority or arguments not contained therein[,]" *Thompson v. Bass*, 261 N.C. App. 285, 292, 819 S.E.2d 621, 627 (2018), we conclude the State's violations of the appellate rules are substantial enough to potentially warrant dismissal of its interlocutory appeal.

Thus, the State's violations of the Rules of Appellate Procedure constitute either jurisdictional defects in the appeal mandating dismissal or substantial non-jurisdictional violations of the appellate rules justifying dismissal of the appeal on the basis that the State has failed to demonstrate appellate jurisdiction in this Court. Therefore, the State—as the appellant—has failed to meet its burden of establishing appellate jurisdiction over this interlocutory appeal.

Nevertheless, under N.C. Gen. Stat. § 7A-32(c), "[t]he Court of Appeals has jurisdiction . . . to issue the prerogative writs, including . . . certiorari . . . in aid of its own jurisdiction[.]" N.C. Gen. Stat. § 7A-32(c) (2021). The decision to issue a writ is governed by statute and by common law. *See State v. Killette*, 381 N.C. 686, 691, 873 S.E.2d 317, 320 (2022). "Our precedent establishes a two-factor test to assess

whether certiorari review by an appellate court is appropriate. First, a writ of certiorari should issue only if the petitioner can show 'merit or that error was probably committed below.' " *Cryan v. Nat'l Council of YMCA of the United States*, 384 N.C. 569, 572, 887 S.E.2d 848, 851 (2023). Second, a writ of certiorari should only issue if there are extraordinary circumstances to justify it. *Moore v. Moody*, 304 N.C. 719, 720, 285 S.E.2d 811, 812 (1982). "There is no fixed list of 'extraordinary circumstances' that warrant certiorari review, but this factor generally requires a showing of substantial harm, considerable waste of judicial resources, or 'wide-reaching issues of justice and liberty at stake.' " *Cryan*, 384 N.C. at 573, 887 S.E.2d at 851 (quoting *Doe v. City of Charlotte*, 273 N.C. App. 10, 23, 848 S.E.2d 1, 11 (2020)).

Here, despite its defects, we conclude the State's appeal raises sufficient merit to consider issuance of the writ of certiorari. Moreover, given the posture of the case, judicial economy and efficient use of judicial resources weighs in favor of exercising our discretion to issue the writ of certiorari pursuant to N.C. Gen. Stat. § 7A-32(c). However, given the substantial and gross violations of the Rules of Appellate Procedure, we tax the costs of this appeal to the State as a sanction pursuant to N.C.R. App. P. 34(b)(2)(a).

## **Issue**

The sole issue on appeal is whether the trial court erred in granting Defendant's Motion to Suppress on the basis the Officer did not have probable cause

to conduct a warrantless search under the totality of the circumstances, notwithstanding the Officer detecting the odor of marijuana.

## Analysis

In reviewing a trial court's determination on a motion to suppress, the trial court's findings of fact "are conclusive on appeal if supported by competent evidence[.]" *State v. O'Connor*, 222 N.C. App. 235, 238, 730 S.E.2d 248, 251 (2012) (citation and quotation marks omitted). "A trial court's conclusions of law on a motion to suppress are reviewed *de novo* and are subject to a full review, under which this Court considers the matter anew and freely substitutes its own judgment for that of the trial court." *State v. Ashworth*, 248 N.C. App. 649, 658, 790 S.E.2d 173, 179-80 (2016).

Generally, a warrant is required for every search and seizure. *State v. Trull*, 153 N.C. App. 630, 638, 571 S.E.2d 592, 598 (2002) (citation omitted). However, "[i]t is a well-established rule that a search warrant is not required before a lawful search based on probable cause of a motor vehicle . . . in a public vehicular area may take place." *State v. Downing*, 169 N.C. App. 790, 795, 613 S.E.2d 35, 39 (2005) (citations omitted). Thus, "[a]n officer may search an automobile without a warrant if he has probable cause to believe the vehicle contains contraband." *State v. Poczontek*, 90 N.C. App. 455, 457, 368 S.E.2d 659, 660-61 (1988) (citation omitted). "A court determines whether probable cause exists under the Fourth Amendment of the U.S. Constitution and Article I, Section 20, of the Constitution of North Carolina with a

totality-of-the-circumstances test." *State v. Caddell*, 267 N.C. App. 426, 433, 833 S.E.2d 400, 406 (2019).

"If probable cause justifies the search of a lawfully stopped vehicle, it justifies the search of every part of the vehicle and its contents that may conceal the object of the search." *State v. Mitchell*, 224 N.C. App. 171, 175, 735 S.E.2d 438, 441 (2012) (citation and quotation marks omitted). "An officer has probable cause to believe that contraband is concealed within a vehicle when given all the circumstances known to him, he believes there is a 'fair probability that contraband or evidence of a crime will be found' therein." *State v. Ford*, 70 N.C. App. 244, 247, 318 S.E.2d 914, 916 (1984) (quoting *Illinois v. Gates*, 462 U.S. 213, 238, 103 S.Ct. 2317, 2332 (1983)).

This Court and our state Supreme Court have repeatedly held that the odor of marijuana alone provides probable cause to search the object or area that is the source of that odor. *See, e.g., State v. Greenwood*, 301 N.C. 705, 708, 273 S.E.2d 438, 441 (1981); *State v. Smith*, 192 N.C. App. 690, 694, 666 S.E.2d 191, 194 (2008); *State v. Armstrong*, 236 N.C. App. 130, 133, 762 S.E.2d 641, 644 (2014).

Here, however, the trial court relied on our Court's decision in *State v. Parker* to apply what it described as an "odor plus" standard in which while—as the trial court articulated—the odor of marijuana was a factor to consider, additional circumstances were required to establish probable cause. In *Parker*, this Court noted: "The legal issues raised by the recent legalization of hemp have yet to be analyzed by the appellate courts of this state." *Parker*, 277 N.C. App. at 541, 860 S.E.2d at 29.

This Court went on, however, to determine "in the case before us today we need not determine whether the scent or visual identification of marijuana alone remains sufficient to grant an officer probable cause to search a vehicle." *Id.* This was so because we determined there were additional circumstances that supported probable cause for a warrantless search in that case beyond the odor of marijuana. *Id.*

As in *Parker*, Defendant here also relied on a memorandum published by the State Bureau of Investigation (SBI). The SBI memo explains that industrial hemp is a variety of the same species of plant as marijuana, but it contains lower levels of tetrahydrocannabinol (THC), which is the psychoactive chemical in marijuana. According to the SBI memo, the legalization hemp poses significant issues for law enforcement because "[t]here is no easy way for law enforcement to distinguish between industrial hemp and marijuana" and there is no way for law enforcement to quickly test and determine whether a substance is hemp or marijuana. Thus, Defendant contended—and the trial court agreed—the odor of marijuana in this case detected by the Officer did not itself give rise to probable cause to conduct the warrantless search—in particular—of the Crown Royal bag on Defendant's person.

In this case, however, as in *Parker*, the Officer had several reasons in addition to the odor of marijuana to support probable cause to search the vehicle and, consequently, the Crown Royal bag. As such, again, "we need not determine whether the scent or visual identification of marijuana alone remains sufficient to grant an officer probable cause to search a vehicle." *Id.*

First, as the trial court found, Defendant made "an acknowledgment, if not an admission" that marijuana had been smoked in the car earlier. Defendant made no assertion at the time the odor derived from legalized hemp. *See id.* at 541-42, 860 S.E.2d at 29 (finding probable cause where a police officer smelled marijuana, the defendant admitted to smoking marijuana earlier, and the defendant produced a partially smoked marijuana cigarette from his person). Further, Defendant was driving a car with a fictitious tag, which the Officer had observed, and which prompted this stop. *Cf. State v. Murray*, 192 N.C. App. 684, 688-89, 666 S.E.2d 205, 208 (2008) (finding a police officer lacked reasonable suspicion to support a traffic stop where the vehicle was obeying all traffic laws, and a check of the license plate showed no irregularities). Additionally, Defendant was driving with an invalid license, which the Officer confirmed prior to the search. *See State v. Duncan*, 287 N.C. App. 467, 473-76, 883 S.E.2d 210, 214-16 (2023) (finding probable cause for a warrantless arrest where law enforcement learned from a license plate check that defendant's driver's license was medically cancelled).[2]

Additionally, the Officer had probable cause to search both the vehicle itself and the Crown Royal bag. "If probable cause justifies the search of a lawfully stopped vehicle,

---

[2] There was also testimony—although disputed—Defendant appeared nervous to the Officer because his hands were "shaking" and he was "fumbling through some paperwork" when the Officer approached the vehicle. *See State v. Corpening*, 109 N.C. App. 586, 589-90, 427 S.E.2d 892, 895 (1993) (noting that a defendant's nervous behavior supported probable cause to search his vehicle). In rendering its Order, the trial court did not address this evidence. This underscores the utility of a written order in these circumstances including specific findings of fact and conclusions of law when allowing a motion to suppress.

it justifies the search of every part of the vehicle *and its contents* that may conceal the object of the search." *Mitchell*, 224 N.C. App. at 175, 735 S.E.2d at 441 (emphasis added); *see also Arizona v. Gant*, 556 U.S. 332, 347, 129 S.Ct. 1710, 1721 (2009) (holding probable cause to believe a vehicle contains evidence of criminal activity "authorizes a search of any area of the vehicle in which the evidence might be found." (citation omitted)). This Court in *Armstrong* upheld the search of a vehicle's glove compartment even after defendants were handcuffed and secured in a police patrol vehicle, which resulted in the discovery of cocaine. 236 N.C. App. at 133, 762 S.E.2d at 644. There, this Court found that the officers involved had probable cause to search the vehicle based on the odor of marijuana emanating from it. *Id.* at 132-33, 762 S.E.2d at 643-44. The present case is analogous.

As discussed *supra*, the Officer had probable cause to search the vehicle based on the odor of marijuana and additional suspicious circumstances. On that basis, the Officer had probable cause to search the vehicle "and its contents" for evidence. *Mitchell*, 224 N.C. App. at 175, 735 S.E.2d at 441. The Crown Royal bag, as one of the contents of the vehicle, was thus subject to the Officer's search. The fact that Defendant attempted to remove the Crown Royal bag is immaterial because the bag was in the car at the time of the stop. *See State v. Massenburg*, 66 N.C. App. 127, 130, 310 S.E.2d 619, 622 (1984) ("The scope of the search is not defined by the nature of the container in which the contraband is secreted but is defined by the object of the search and the places in which there is probable cause to believe it may be found.")

Here, the object of the Officer's search was evidence of marijuana, which it was reasonable to believe could have been in the Crown Royal bag. Therefore, because the Officer had probable cause to search the vehicle, he also had probable cause to search the Crown Royal bag.

Thus, the Officer was aware of several suspicious circumstances—including the odor of marijuana—at the time of the search. Therefore, under the totality of the circumstances, the Officer had probable cause to search the Crown Royal bag. Consequently, the trial court erred in granting Defendant's Motion to Suppress the evidence that resulted from the search.

## **Conclusion**

Accordingly, for the foregoing reasons, the trial court's grant of Defendant's Motion to Suppress is reversed, and this case is remanded for additional proceedings. Additionally, due to the substantial violations of the Rules of Appellate Procedure, the costs of this appeal are taxed to the State.

REVERSED AND REMANDED.

Judge GRIFFIN concurs.

Judge MURPHY concurs in part and dissents in part by separate opinion.

MURPHY, Judge, dissenting in part.

While I agree with the Majority's analysis that we lack jurisdiction over this appeal, I dissent from its decision to nevertheless exercise jurisdiction in this case. Although Judge Carpenter's reasoning below was provided by our Court in a recent unpublished opinion, I believe that this case, in which the State has not even sought the issuance of a writ of certiorari, fits squarely within his analysis:

> "We require extraordinary circumstances because a writ of certiorari 'is not intended as a substitute for a notice of appeal.'" [*Cryan v. Nat'l Council of YMCAs of the U.S.*, 384 N.C. 569, 573 (2023) (quoting *State v. Ricks*, 378 N.C. 737, 741 (2021))]. "If courts issued writs of certiorari solely on the showing of some error below, it would 'render meaningless the rules governing the time and manner of noticing appeals.'" *Id.* at 573 (quoting *Ricks*, 378 N.C. at 741). An extraordinary circumstance "generally requires a showing of substantial harm, considerable waste of judicial resources, or 'wide-reaching issues of justice and liberty at stake.'" *Id.* at 573 (quoting *Doe v. City of Charlotte*, 273 N.C. App. 10, 23 (2020)).

> Here, Defendant argues the trial court erred, but Defendant fails to explain why this case involves an extraordinary circumstance sufficient to excuse his failure to preserve his right to appeal. Notably, Defendant fails to mention the word "extraordinary" in his PWC. Defendant merely concludes that the "interests of justice thus require" us to grant a writ of certiorari. Defendant's argument falls far short of our extraordinary-circumstance standard, and further, our review of the record reveals no extraordinary circumstances. *See id.* at 573. Therefore, we deny Defendant's PWC and dismiss his appeal for lack of jurisdiction. *See* [*State v. Reynolds*, 298 N.C. 380, 397 (1979)].

*State v. Duncan*, No. COA22-906, 2023 WL 8742997, at *1–2 (N.C. Ct. App. Dec. 19,

2023) (unpublished) (parallel citations omitted). The State has not argued, and the record does not reveal, anything extraordinary regarding the State's negligence in invoking our jurisdiction. I decline this opportunity to do to the State's job for it and would dismiss its appeal.[3]

---

[3] I would further note that, unlike in *Lakins v. W. N.C. Conf. of United Methodist Church,* the Majority's result does not provide this Court with an opportunity to reach the ultimate undecided issue regarding probable cause and the odor of marijuana. *See Lakins v. W. N.C. Conf. of United Methodist Church*, 283 N.C. App. 385, 390-91 (2022).